Robertson, J.
In February, 1837, Hugh Smith, the testator represented by the defendant, died, leaving a last will and testament, by which he made his wife and Peter Smith and two other persons executors thereof. At the time of his death he was a resident of Kings County. Letters testamentary were, in the same year, issued by the Surrogate of that county, to Peter Smith, named as executor in such will. In 1841, (about four years afterwards,) late in June, upon the ex parte application of the executor, Peter Smith, the Surrogate of Kings County, made an order, that a notice requesting all persons having claims against the estate of the deceased testator to “present ” the same, with the vouchers thereof, to such executor, “at the office of C. E. Grim, Esq., Attorney and Counselor at Raw, No. 9, Nassau Street, New York," before a certain day, (Jan. 20,1841,) more than six months thereafter, be published in (The Brooklyn Evening Star,) a newspaper printed in such county, once in each week, for six successive months, which notice, in such form, was so published. Eothing was said in such order respecting the Surrogate’s “ deem- “ ing' such insertion in such newspaper most likely to give “ notice to the creditors of the deceased.” The claim in this action, made out in writing, properly verified by affidavit, together with a written notice offering to refer the same, if disputed, to three persons to be appointed by the Surrogate of Kings County, pursuant to the statute, by an agreement in writing, and to attend at the Surrogate’s office, on two . days’ notice, for the purpose, and stating that if no such appointment was made, it would be deemed a refusal, was served on Peter Smith, the executor, in Eovember, 1843, .who stated that he .rejected such claim, and might be considered as having refused to refer *692 it, unless he gave notice to the contrary in six days, which he never did. Nothing was said at that time of the publication of any notice, nor was any evidence given to show any knowledge by the plaintiff at any time before the commencement of this suit, of the publication of the notice in question.
It is claimed that the non-presentation of such claim until after the expiration of the time fixed by the publication of the notice before mentioned, was a bar to any claim for costs against the defendant to be levied of his property or that of the deceased. This is set up under the provision of the Bevised Statutes of 1830, by which costs are prohibited from being “recovered against any “ executors or administrators, to be levied of their pro- “ perty, or of the property of the deceased, unless it appear “ that the demand on which the action was founded was “ presented within the time” fixed by the statute, “ and its “payment was unreasonably resisted or neglected, or the “ defendant refused to refer the same according to the pre- “ ceding provisions” of such statute. (2 R. S., 90, § 41.)
The Supreme Court of this State has held that the designation by the Surrogate, of a newspaper in which to publish such a notice, if in the same county, rendered a publication in any other newspaper unnecessary. (Dolbeer v. Casey, 19 Barb., 149.) This leaves room, however, for considerable doubt whether a mere order for publication is sufficient without a formal adjudication, even ex parte, that a publication in such newspaper alone is deemed most likely to give notice to creditors, as required by the statute. (2 R. S., 88, § 34.) To sanction merely a publication in a newspaper is one thing, and to determine that such publication is most likely to give notice to creditors, is another. The latter requires the exercise of some discretion, and some materials, such as an affidavit of the residences of the creditors, on which such discretion might operate. The former Supreme Oourt of this State, decided at Special Term, that the statute, as to costs against executors, was peremptory, , and admitted of no excuse to take a case out *693 of its operation, if proved to be in the category required. (Bradley v. Burwell, 3 Denio, 262.) Taking these two decisions as controlling, it will be necessary to examine how far the notice in question complied with the statute.
The publication of such notice is required to be begun at least six months after granting of letters testamentary, or of administration. The notice is only required to be published in one newspaper of the county where the letters were granted, and in such others, as on an ex parte statement, the Surrogate may be satisfied will be sufficient to give notice to the creditors of the decedent. Any heedless decision by him in that respect might inflict on creditors the burden of a long litigation at their own expense. The statute, however, requires an exhibition, by the creditor, of his claim, to the executor or administrator, and for that purpose, requires the place of such exhibition to be the residence or place of transaction of business generally by such representative, to be specified in the notice to creditors. (2 R. S., 88, § 34.) If it had intended the mere deposit of a written claim at a certain place to be designated, it would have said so. But it evidently intended to give each creditor an opportunity of a personal interview with the representative, by requiring him to be notified of the place of residence or business of the latter, so as to be able to find him, and know what he had to expect. The next section (§ 35) carries out the same idea by giving the executor, on such presentation, the right to require of the creditor, then present, satisfactory vouchers, and an affidavit in a certain form. If, after all this is done, he still doubts the justice of the claim, the claimant must propose to him to refer it, (Proude v. Whiton, 15 How. Pr., 304,) after which the executor resists *at the peril of costs. The alternative of “residence or place of business” in such notice, shows an intent to designate something actually existing previous to and independent of the order, and not a factitious place of residence or business, created for the purpose, by the order. The provision as to the place, was for the benefit of the creditor, to enable him to find *694 the executor, as it was not necessary that his communication of his claim should be made at that place to the representative ; it would be sufficient, however or wherever made, if it reached him. (Gansevoort v. Nelson, 6 Hill, 389.) The creditor alone has a right to complain that information of the residence or place of business of the representative was not given him by the notice that might defeat his claims, or at least throw on him all the burden of the costs of an obstinate litigation. Much mischief might result to creditors from allowing an executor to select a place to exhibit claims to him, where there is no obligation upon him to be found and no motive to be present. In this case the place specified was declared to be the office of a counsel, and neither the place of business nor residence of the executor. There was no evidence that he could have been found there any time within the six months, except accidentally. The same statute deprives a claimant, who does not exhibit his claim within six months from the first publication of such notice, no matter how long time was given by it, of any right, to the extent of assets distributed by the representative, for debts of inferior degree, or to the next of ldn or legatees, and makes such publication and distribution a bar. (2 R. S., 89, §, 39.) Such stringent consequences require the executor to bring his notice clearly within the statute, and he has not done so in this case. (Jenkins v. Wild, 14 Wend., 545; Argall v. Smith, 3 Den., 437.) The meaning of the words “place of carrying on business,” as used in two English statutes, (9 & 10 Vict., c. 95; 15 & 16 Vict., c. 54, § 4,) has been explained in three leading cases. (Minor v. Lond. & N. W. Railway Co., 1 Com. Bench, [N. S.,] 1 J. Scott, [N. S.,] 331; Shiels v. Gr. North'n Railway Co., 30 Law Jour., [N. S.,] Q. B., 332; Corbett v. Gen. Steam Navig. Co., 4 Hurlst. & Norm., 482.) It was held in those cases that the office of an agent to receive parcels for a railway company, was not their place of carrying on business, for the purpose of being served with process, or to affect a question of costs. In the last case, Maetut, J., observes that “the agents *695 “ were not the servants of the defendants; there is nothing “whatever to show any relation of master and servant “ between them.” So in this case, there was nothing to show that Mr. Grim was a mere servant, so as to make his office that of the defendant. In the case of Belknap v. Hasbrouck, [13 Abbotts’ Pr., 418, n,) where a party transacted business was held not to be necessarily a place of business.
There is undoubtedly great room for questioning the reasonableness of the decision in Dolbeer v. Casey, [ubi sap.] The statute would seem to impose on the executor, the duty of publishing in one county paper, and on the Surrogate, of deciding what other paper, whether in the county or not, was most likely to convey information to creditors. It appeared to contemplate two at least; but I prefer resting on the insufficiency of the notice. The plea in this case sets up a publication in two newspapers, and a distribution of the estate as a bar. If Dolbeer v. Casey, be law, one was equally good if selected by the Surrogate.
The same question as to notice, was evidently before this Court on the former application for costs, after the fourth trial, as appears by the order made, which recites that it was made among other things, upon a copy of the Surrogate’s order and proof of publication, and because it appeared to the Court “ that the demand on which this “action was founded, was duly presented; that the executor refused to refer the same pursuant to the statute, and “ that the payment of the same was unreasonably resisted.” The points of counsel used on such motion, presented the same question. Whether the Court held notice in one newspaper insufficient, the notice defective, or the foreclosure suit to be notice of the claim, or that the defend-ant, the executor, had waived the effect of the publication or misled the plaintiff, does not appear. They evidently decided on the same facts as are now before the Court, that the demand was duly presented. It would hardly be proper, even were I of a different opinion from the learned Judges who made that decision to depart from its authority *696 at Special Term, not as res judicata, but as a decision on the same facts.
There is also great room for holding the plaintiff entitled to costs, against the estate represented by the defendant under the Code of Procedure. (§ 317.) The provision of the Revised Statutes already referred to, (2 R. S., 90, § 41,) prohibits costs in suits against executors, whether to be levied of their property or that of the party represented, unless in the cases therein prescribed; in other words, it exempts both the executors personally, and the estate represented by them from costs.' The section of the Code referred to, (§ 317,) makes a general rule by which representative parties are put on the same footing as to costs, as parties defending in their own right, except that such costs are to be paid out of the estate represented. It, however, enables the Court to charge such a representative personally, when guilty of mismanagement or bad faith. This is immediately followed by an exception, preventing costs from being recovered against executors, (without mentioning in suits against them,) where they are exempt by the provision of the Revised Statutes already cited. This is evidently intended to be a personal exemption, and not a relief of the estate represented, and qualified the immediately preceding provision allowing costs personally. The whole section established a fairer rule, to wit: That the estate to be benefited by a defense, successful, should be chargeable with the expense if it fail..
The motion must be granted, with ten dollars costs, to be costs in the action. , . „ .