Hoyt *v.* Bonnett.

Judgment affirmed.

[First Department, General Term, at New York, February 7, 1871. *Ingraham,* P. J., and *Geo. G. Barnard,* Justice.]

---

## Edwin Hoyt and others *vs.* Peter R. Bonnett and others, Executors, &c., and others.

The statute does not limit the claims to be presented to executors by creditors, to such as are due. Whether due or not, if there is an intention to make a claim against the estate, notice of that claim should be presented, and if it be not due, the statute (2 *R. S.* 96, § 74,) points out the course to be pursued, upon the accounting.

Executors may select a place as their place of business or residence, so far as their relation to the estate is concerned; and the designation, in a notice published in the newspapers, of a place where claims of creditors, against the estate, shall be presented, makes that the residence or place of business of the executors, for that purpose, within the meaning and object of the statute. (2 *R. S.* 88, § 34.)

The decision to the contrary, in *Murray* v. *Smith,* (9 *Bosw.* 689,) disapproved.

Where executors, on the presentation of a claim against the estate, to them, positively declined, in writing, to pay the same; *Held* that this amounted to a rejection of the claim; although they, at the same time asked for a bill of particulars, and a list of vouchers.

*Held, also,* that the executors did not, by stating that they would be "greatly obliged" for a bill of particulars, &c., qualify their refusal to pay; they making no promise, and giving no intimation that their action would be altered by such a bill, if one were sent.

And that if the claimants neglected to furnish any bill of particulars, they could not claim that the demand for one was a qualification of the previous rejection.

Vol. LVIII. 34

THIS is an appeal from a decree of the surrogate of the county of New York, settling the accounts of executors and ordering payment of legacies.

The question presented by the case was whether the claims made by the appellants were barred by the statute, by reason of the omission of the claimants to commence suit thereon within six months after the time when the same were rejected by the executors, or after they became due.

Augustus Whitlock, of the city of New York, died prior to September 20, 1866, leaving a last will and testament, which was duly admitted to probate, and on the last mentioned day letters testamentary on the said will were issued by the surrogate of New York, to Daniel Whitlock and Robert C. Gwyer, two of the executors therein named, and on September 22, 1866, to Peter R. Bonnett, the other executor therein named. The testator was, at the time of his death, a copartner in the firm of Whital, Le Fevre & Co. of Waterbury, Connecticut. This firm of Whital, Le Fevre & Co. was solvent, and the interest of the estate therein was sold by his executors to Wm. H. Bonnett, one of the legatees under the will, for $50,000. The testator, Augustus Whitlock, was also a copartner in a manufacturing corporation called Glenville Mills, Glenville, Connecticut. Hoyt, Spragues & Co., the appellants herein, had an account as factors and commission merchants, with Whital, Le Fevre & Co. for moneys advanced on woolens consigned to them by Whital, Le Fevre & Co., and on July 1, 1867, claimed a balance of account thereon of $507,501.65, against which they held cloth goods unsold amounting to about 270,000 yards in quantity, the proceeds of sale of which were applicable to the said balance of account. They had also an account for moneys advanced to the Glenville Mills, amounting, July 1, 1867, to $5115.21. On April 4th, 1867, the executors of Augustus Whitlock obtained from the surrogate an order "that the

said executors insert a notice once in each week, for six months, in the New York *World* and New York *Transcript*, requiring all persons having claims against said deceased, to present the same, with the vouchers thereof, to said executors, at their places of residence or places of transacting business, to be specified in such notice, on or before a day therein mentioned," &c. The executors, respectively, resided in the city of New York, and carried on business therein, and each had a place of business in said city, as follows : Peter R. Bonnett resided at No. 6 East Twelfth street, and had a place of business at No. 52 Vesey street; Daniel B. Whitlock resided at No. 218 West Twenty-eighth street, and had a place of business at No. 46 South street; and Robert C. Gwyer resided — Irving Place, and had a place of business at the corner of Old Slip and Front street. The only notice published by the executors, pursuant to said order of April 4, 1867, was in the following words :

"In pursuance of an order of the surrogate of the county of New York, notice is hereby given to all persons having claims against Augustus Whitlock, late of the city of New York, deceased, to present the same, with vouchers thereof, to the subscribers, at the office of Messrs. Amherst Wight & Son, No. 119 Broadway, in the city of New York, on or before the eleventh day of October next.

Dated New York, the 5th of April, 1867.

DANIEL B. WHITLOCK,<br>ROBERT C. GWYER,<br>PETER R. BONNETT,<br>Executors."

Hoyt, Spragues & Co., on October 8, 1867, sent to the office of Messrs. Amherst Wight & Son, directed to said executors, notices of their claims against the estate of Augustus Whitlock. Each claim was for "balance of account for moneys advanced" to the firms above mentioned, in which the testator was a partner; and was verified by

an affidavit stating that the claim was "justly due and owing" to the claimants.   On November 9, 1867, the executors served on Hoyt, Spragues & Co. a notice, of which the following is a copy:

" To Hoyt, Spragues & Co. :

Gents.—You are requested to take notice, that the executors, &c., of Augustus Whitlock, as at present advised, decline to pay your claims against the estate of Augustus Whitlock for $5115.21, and for $507,601.65, presented to the attorneys for said executors, and filed with them on the 8th day of October, 1867.

Having no other means of procuring information concerning the details of said claims, they will be greatly obliged if you will furnish them a bill of particulars containing the items of your accounts, the dates when contracted, and a list of the notes or other vouchers which you hold for the same.

New York, November 9th, 1867.

P. R. Bonnett,

Robert C. Gwyer,

D. B. Whitlock,

Executors."

On June 11, 1869, the executors presented to the surrogate a petition for a final settlement of their account as executors.   In the petition, which was verified by the oath of the executors, Hoyt, Spragues & Co. are named among the persons interested in the estate as " creditors, legatees, next of kin, or otherwise."   Hoyt, Spragues & Co. were duly cited as persons so interested, to appear on the final accounting on July 19, 1869.   Hoyt, Spragues & Co. appeared, pursuant to citation, and it then appearing that the executors had omitted their claim in the account, and claimed that it was barred and extinguished, as a claim which had been disputed and rejected, and on which no action had been commenced within six months from

Hoyt *v.* Bonnett.

the date of its rejection, Hoyt, Spragues & Co. duly objected to the account on the ground of such omission. It was claimed before the surrogate, on the part of Hoyt, Spragues & Co., that they were creditors of the estate, having a claim not yet liquidated, and ascertained as to amount, but which would become liquidated and due so soon as the consigned goods in their hands were sold; that the claim had never been so disputed or rejected as to be barred by statute for non-commencement of suit within six months after notice, and that no sufficient notice had ever been given to set the statute in motion. The executors claimed that they were entitled to a decree for final accounting and distribution, without reference to the claim of Hoyt, Spragues & Co., on the ground that the claim was barred by the statute, as a rejected claim, on which no suit had been commenced within six months after its rejection. The surrogate overruled the objections, and proceeded to pass the executors' accounts, and to decree distribution, without reference to the claim of Hoyt, Spragues & Co. And from such decree Hoyt, Spragues & Co. appealed to the general term of this court.

*Wm. A. Butler*, for the appellants.

I. The undisputed facts appearing before the surrogate by the allegations and proofs of the parties, respectively, upon the proceedings for the accounting, showed that a claim existed in favor of Hoyt, Spragues & Co. against the estate of the deceased, to a large amount, which was not then due. It was, therefore, the duty of the surrogate to have ascertained and allowed a sum sufficient to satisfy the claim, or the proportion to which it was entitled, to be retained by the executors, pursuant to the provisions of section 74, article 3, chapter 6, part 2 of the Revised Statutes; (2 *R. S.* 96;) or he should have suspended the accounting and distribution, pursuant to the provisions of section 64 of the same article, until the claim was

liquidated and adjusted. 1. The claim was not due. It was for factors' advances on consigned goods, which had not been sold, and the proceeds of which were applicable to the liquidation of the account. It is well settled that where a commission merchant makes advances on goods consigned to him for sale, the proceeds of the consigned property are the primary fund to which he must look for reimbursement, and it is incumbent on him to show that the fund is insufficient, before he can recover against the consignor personally. (*Gihon* v. *Stanton,* 9 *N. Y.* 476.) 2. The claim as presented was not for any debt due, but was a statement of the cash advances as made, and of the property in hand to meet the same. No suit could have been commenced on the claim, as it could not be ascertained whether any or what balance would be due to Hoyt, Spragues & Co. at the close of the transaction, so long as the goods remained unsold. It was therefore the duty of the surrogate to have provided for the claim as required by section 74, above cited, or to have suspended the accounting, as provided by section 64. Section 64 provides that the hearing of the allegations and proofs of the respective parties may be adjourned from time to time as may be necessary, &c. (2 *R. S.* 94, § 64. *Curtis* v. *Stilwell,* 32 *Barb.* 354, 356.)

II. The claim was not barred or affected by the provisions of section 38, article 2, chapter 6, part 2, of the Revised Statutes, inasmuch as no part of the debt was due at the time of the supposed rejection of the claim. It is subtantially conceded by the surrogate that the demand of Hoyt, Spragues & Co. was simply a " claim," and not a " debt," and yet in his decision and decree he treated it as a debt barred by the statute. This was plainly error.

III. Even if the provisions of section 38 applied, the claim was not " disputed or rejected" by the executors, within the meaning of the law, so as to set the six months statute of limitations in operation. 1. The notice was

Hoyt v. Bonnett.

to the effect that the executors, as at present advised, declined to pay the claim, and requested further particulars, vouchers, &c. There was no dispute or rejection, so as to notify the claimants that the executors intended to set the statute in operation against them, or not to admit the claim against the estate as a claim. 2. If through inadvertence, or for any cause, Messrs. Hoyt, Spragues & Co. neglected to furnish the further particulars, the executors could then, for want of them, have disputed or rejected the claim. But as yet they have not done so. They stand on the record asking information about the claim. This is wholly inconsistent with the notion that they disputed or rejected it. That would depend on their further decision after receiving the particulars. They could not in the same breath say, " we dispute and reject the claim," and " we request a bill of items." 3. The authorities are uniform in holding executors very strictly to the requirements of the statute which limits rights of action, and to make it applicable, there must be a positive and explicit dispute or rejection. (*Barsalou* v. *Wright*, 4 *Bradf.* 164. *Elliot* v. *Cronk's Adm'rs.*, 13 *Wend.* 35. *Kidd* v. *Chapman*, 2 *Barb. Ch.* 414. *Reynolds* v. *Collins*, 3 *Hill*, 36.) · 4. It is evident, by the terms of the notice, that the executors proceeded under section 35, which authorized them to require vouchers , in support of the claim. (2 *R. S.* 88, § 35.) The failure to furnish vouchers might have justified them in rejecting the claim for that reason, as above conceded, or in calling for a reference as provided by section 36, (2 *R. S.* 88, § 36,) but they were not at liberty to hold the question of allowance or rejection in abeyance until the final accounting, and after citing the claimants as creditors, to ignore their claim as barred by statute, and procure a decree of the surrogate adjudging it to be so barred, (*Tucker* v. *Tucker*, 4 *Keyes*, 146, 148.)

IV. The statute did not apply, inasmuch as no sufficient notice for the presentation of claims had been given

by the executors, in pursuance of the surrogate's order of publication. 1. The notice published was not a compliance with the statute, or with the surrogate's order, as it did not require the claims to be exhibited at the "place of residence" or "place of business" of either of the executors. This is a fatal defect. (2 *R. S.* 88, § 34. *Murray* v. *Smith*, 9 *Bosw.* 689.) 2. The fact that Messrs. Hoyt, Spragues & Co. presented their claim pursuant to the notice, did not prevent them from objecting that the notice was insufficient under the statute. The executors invoked the aid of the statute to destroy the claim upon grounds which rested solely upon proof to be made by them of a strict pursuance of the statute. Every fact thus became jurisdictional, and this being the case, they must make out a case of complete compliance with the statute. In such cases consent cannot confer jurisdiction or aid the statute. "The law, and not the consent of the parties, confers jurisdiction, and that rule could have no practical force, if consent, given in whatever form, could preclude inquiry as to the lawfulness of the jurisdiction." (*Per Johnson, J., in Beach* v. *Nixon*, 9 *N. Y.* 36. *Tucker* v. *Tucker*, 4 *Keyes*, 136. *Dudley* v. *Mayhew*, 3 *N. Y.* 9. *Garcie* v. *Sheldon*, 3 *Barb.* 232.) 3. The surrogate therefore erred in holding that the order to advertise, and the notice under such order, "were not jurisdictional points," and that the only jurisdictional question for the surrogate was the disputing or rejection of the claim. The statutory limitation is only applicable to cases where the rejection of the claim is after the publication of a sufficient notice, as authorized by section 34. (*Whitmore* v. *Foose*, 1 *Denio*, 159.)

V. The surrogate having no jurisdiction to try the claim, if disputed, (*Magee* v. *Vedder*, 6 *Barb.* 352 ; *Wilson* v. *Baptist Ed. Society*, 10 *id.* 308 ; *Disosway* v. *Bank of Washington*, 24 *id.* 60 ; *Curtis* v. *Stilwell*, 32 *id.* 354 ; *Andrews* v. *Wallege*, 17 *How.* 263 ; *Tucker* v. *Tucker*, 4 *Keyes*,

Hoyt *v.* Bonnett.

136 ;) and the executors having failed to take such action under the statute as to extinguish and bar the claim, it was error in the surrogate to adjudge it barred, and to permit the executors, on that ground, to distribute the estate without reference to it. He should have adjudged the claim to be an undisputed one, or have required the executors, by proper proceedings under the statute, to place it in a position for adjudication, and have suspended proceedings in the mean time. (See point I.)

VI. The decree of the surrogate should be reversed, and the cause remitted to the surrogate for further proceedings.

*C. A. Peabody*, for the respondents.

The principal questions to be considered are, 1. Whether the notice by the executors to persons having claims against the deceased, to present them to the executors, published under an order of the surrogate, was regular and sufficient in law. 2. Whether the claims presented by the appellants were rejected or disputed—that is, whether the answer made by the executors amounted to a rejection or disputing of the claims. And, 3. Whether the claims presented were for money not then due. The only objection made to the notice given by the executors is that it does not call on claimants to present their claims at the place of residence or of transaction of the business of the executors.

I. The notice published was sufficient. It was a notice to present claims at a place designated by the executors as the "place of transaction of business." They had the right to designate their place of transacting business, and the place so designated became, *ipso facto*, their place for the transaction of business. The statute does not mean that they must designate a place at which they transact other business. It is sufficient that it is their place for the transaction of this business, and as to that, it is made

the place for this business by their designation of it to that end.

II. The language of the statute is, "any executor or administrator * * may insert a notice * * requiring all persons having claims to exhibit them to such executor or administrator * * at the place of his residence or transaction of business." * * (3 *R. S. p.* 175, § 39, *5th ed.*) What was the place of residence of these executors? In this case there were three executors—not one, as the statute seems to contemplate. The statute says *his*, "contemplating only one executor," and makes no provision for more than *one*. Of course, the right to give such notice is not limited to the case where there is but one executor. It applies equally to a case where there are more than one.

III. The notice must be to exhibit them at the place of residence or transaction of business of the three executors giving the notice, and not at that of any one of them. 1. The three executors had no place of residence. Bonnett resided at No. 6 East 12th street, Whitlock at No. 218 West 28th street, and Gwyer at No. — Irving Place. Each one had a place of residence. The three had no place of common residence. 2. They had no place for the transaction of business—no other place common to them all. Bonnett was a grocer at 52 Vesey street. Whitlock was treasurer and book-keeper at 46 South street. Gwyer was a merchant, corner of Old Slip and Front street. As to their usual avocations, these executors had no place of business. The three had no place of business except the office designated in the notice.

IV. The office of Messrs. Amherst Wight & Son was a place of business to them, and was the only place of business of them. 1. One executor may fix his own place of residence or transaction of business. 2. Three, unless they reside together, cannot fix their place of residence—they have no place of residence. They must designate a

Hoyt *v.* Bonnett.

place of business, not of one of them only, but of all. An executor must designate *his* place of residence or transaction of business. A plurality of executors must designate *their* place of residence or transaction of business; not that of one of them, but that of all. 3. These executors had a place of business common to them all, the office designated, and they had no other common to them all. This was their place of transaction of business not only. It was their place of business of this estate especially, and peculiarly their place for the transaction of business of this kind, relating to this estate, business semi-legal, or having questions to be considered and decided under advice and direction of counsel. Suppose that these executors had had no place of residence or business within the State, had been non-residents and without other business here? In such a case how could they have fixed their place of residence or transaction of business as the place where these claims should be exhibited? As non-residents, could they have fixed their places of residence or transaction of their business generally—out of the State or remote from it perhaps—as the place for these claims to be exhibited? Must they so fix it? That is what the argument of the appellants requires. Executors are frequently non-residents of the State, and have no place of residence or of business within it. They cannot fix a place out of the State, and remote from it, it may be. In such a case he or they cannot fix his or their place of residence or business—outside the State—as the place to exhibit claims; that is plain. Where a sole executor, or all of several executors, reside out of the State, and have no place of business within it, they must designate a place within it. They must designate some place of business within the State; and doing so, they make it thereby, *ipso facto*, their place for the transaction of business, within the proper meaning of the statute. The place " of transaction of business" of these executors is, for the purpose

under consideration, the place designated by them for the purpose. It need not be the place of transaction of other business, or of their business generally. Any place, being designated by the executors as the place for their business, becomes, within the statute, the place for the transaction of this business, and the demand of the statute is complied with. If there were a doubt whether the place were within the terms of the statute, claimants could not avail themselves of it, because they have accepted it as correct, and acted on it as being so. They have presented their claim at the place designated, and they cannot now assert that that is not the proper place for the purpose. This would cure the error, if any had existed in the notice. The case of *Murray* v. *Smith,* (9 *Bosw.* 689,) is not an authority in point. In that case there was only one executor. He had one place of residence and one place of business. It was possible, therefore, to specify his place of residence or place of business in the notice. In this case there are three executors, having three separate places of residence and business, as to their general business. No one of them, nor all three of them of either class, or the six of the two classes, could properly be specified. The application of the rule stated in this case was therefore impossible. Besides this, in *Murray* v. *Smith,* the claim had not been presented at the place named, and there was no evidence that notice had practically reached the claimant; while in this case notice is shown, and the claims have been presented at the place named in it, and have reached the executors and been acted on by them. In that case there was an effort to charge the creditor with constructive, without proof of actual, notice. This is a case of admitted actual notice. It is too late to object to the place named, after they have availed themselves of the notice and complied with it. They are estopped to repudiate their own action. The case of *Murray* v. *Smith,* moreover, is only a special term decision, and in no respect binding on this court as now constituted. It

Hoyt *v.* Bonnett.

has no intrinsic merit to commend it, and would not be followed even if it were directly in point. The claim of Messrs. Hoyt, Spragues & Co. was duly presented at the place designated in the notice, the office of Messrs. Amherst Wight & Son, addressed to the executors. It was delivered to the executors at that office, and by them received on or about the 8th day of October, 1867. This shows at least that the error in the notice, if there was one, has done no-harm. The presentation of the claim cured the error, if there was one, as a general appearance cures a defect in the service of process, or a compliance with any other requisition is a waiver of objection to the correctness of it.

V. The claims were "rejected" or "disputed." The rejection, or notice that the executors declined to pay, was in writing, and very full. The language is, "take notice that the executors  *  *  *  decline to pay your claims for $5115.12, and for $507,601.65." "The executors  *  * decline to pay your claims," &c. This is a rejection of them. It is also a disputing of them. A refusal to pay, and notice that they will not pay, is all that executors can give claimants, in the way of the rejection of claims. It is the only objection they are competent to make. "We reject your claims," or "we dispute your claims," would not be anything more. It would only be a notice that they would not pay. That is the practical fact of rejection.

VI. The claim as made and presented is due, and was so when it was presented. 1. The statements therein are of a debt due. The language is of the present time. 2. They are both for balances of account. There is no presumption that a sum stated to be owing, as being balance of account, is not yet due. The reverse is the presumption. A claim for balance of account is a claim of a sum already due, unless the contrary appear. 3. The presumption is greatly strengthened in the case of a claim against the estate of a deceased person. 4. In case of a

claim made pursuant to notice to present claims, which notice can in no case be given until more than six months after the executors or administrators have qualified, the presumption is much stronger than in another case. 5. In this case the order bears date April 4, 1867. It recites that more than six months had elapsed since the executors were appointed. The claims were presented October 8, 1867, more than six months after the date of the order. Of course, at the time of the presentation of the claims, more than a year had elapsed since the death of the testator. 6. In point of fact, more than seventeen months had elapsed since the death of the testator, who died May 4th, 1866. 7. The claims are both of them for balances due on mercantile transactions, in which credit of great length is seldom if ever given, and the presumption must be strongly against it in this case.

VII. The burthen is not on the executors to show that the objectors' claim is due. The burthen is on the objectors to show that their claim is not due. 1. A claim made must be presumed to be due unless the contrary appears. The objectors know what their claim is, and whether they claim it is due or not. 2. The knowledge of the fact is necessarily with the claimants, and is not with the executors. Whether they claim that the debt asserted by them is due, is almost a mental operation of their own, and can hardly be known to another. One who denies and is ignorant of the existence of the whole thing, surely cannot be held to a minute knowledge of its qualities and characteristics in detail. The executors are not supposed to have any knowledge or means of knowing about a claim they reject, and they are not bound to know about it.

VIII. But the executors have not only disputed and rejected the claim, they have also called for further information respecting it. They have demanded the "satisfactory vouchers in support thereof," contemplated and authorized

Hoyt *v.* Bonnett.

by the statute, (3 *R. S.* 175, § 40, *5th ed.*) and this demand has not been complied with. The statement as presented gives no information at all, except a gross sum, which is not pretended to be the measure of the claim. Did the claimants—these objectors, the only source of information on the subject—comply with the request, and give them the information desired ? It is not pretended. Of course the objectors knew that this answer was a refusal. The executors appealed to the claimants for information, saying they had no other means of information. The claimants refuse to give the information, and it follows that the executors have none, and that the objectors knew that fact. The objectors therefore are wantonly in default in withholding the information called for.

IX. The knowledge of the executors was that derived from the statement that claims were for loans and advances of money made to the firm. That the firm had been dissolved at least more than a year, and about 18 months before, the deceased having been dead about that time, but in point of fact it was dissolved long before his decease. It states claims, and without saying expressly whether they are due, leaves the impression that they are. They are stated as claims *in presenti*. Nothing in them indicates that the claims are not due. If they were to become due at a future time, that fact should have been stated. They were made up to July, 1867. That suggests that they were due, at any rate, before that time.

*By the Court,* CARDOZO, J. The appellants, in their proceeding to review the action of the surrogate, have themselves characterized their claim against the estate as a debt due and owing. It is most likely that they were right in so regarding it, though it is not consistent with the ground upon which they ask us to reverse the surrogate's decision. But I do not think it necessary to determine that point. The statute does not limit the claims

to be presented to the executors, to such as are due. Whether due or not, if there is an intention to make a claim against the estate, notice of that claim should be presented; and if it be not due, the 74th section of the statute (2 R. S. 96) points out the course to be pursued, upon the accounting.

It is objected that the notice to present claims was insufficient; and the case of *Murray* v. *Smith*, (9 *Bosw.* 689,) a special term decision, by Justice Robertson, is relied upon. We think that decision cannot be sustained. The executors may select a place as their place of business or residence, so far as their relation to the estate is concerned, and the designation, in the notice, of a place where the claims shall be presented, makes that the residence or place of business of the executors, for that purpose, within the meaning and object of the statute.

The next question is, the claim having in fact been presented to the executors, did they reject it? I think they did. They declined to pay the claim, which was certainly a rejection or dispute of it. Their declination was not contingent. It is true, they asked for vouchers; but although they did so, they at the same time absolutely declined to pay. If, after that, the claimants wanted any further action, any reconsideration of the subject by the executors, they should have re-opened the matter by some communication, and if the executors had then discussed the matter, it might be that the rejection could not be considered as final. (*Barsalou* v. *Wright*, 4 *Bradf.* 164.) But nothing of that kind occurred. The executors did not, by stating that they would be "greatly obliged" for bill of particulars, &c., qualify their refusal to pay. They made no promise, and gave no intimation that their action would be altered by such a bill, even if one were sent. But none was sent. And giving to the notice of rejection the most liberal construction which the appellants can claim, its meaning could not have been more favorable to

their view than this: "We reject your claim. If you want us to reconsider this, send further information." When thus notified, the appellants in effect say, we have no further information to give; and as the notice fully apprised them that, as things then stood, the claim was rejected, I think the surrogate was right, and that his decree should be affirmed.

. Decree affirmed, with costs.

