JAMES LONG AND MATTHEW SIMPSON, EXECUTORS v. MAYOR, RECORDER AND ALDERMEN OF BATTLE CREEK.

*Parol evidence to explain agreement—Municipal corporations— Agreement by private citizen to share expense of public improvements.*

An oral proposition was made to a common council and acted on. *Held* that its recital in the council records would not preclude oral testimony as to what it really was, nor of subsequent conversations in regard to it between the man who made it and members of the council.

Where a proposition made to a municipal corporation as to matters within the scope of its powers is accepted with modifications which the proponent assents to, he is as much bound by them as if they had been in his original proposition.

A private citizen made an oral proposition to the city council to the effect that 'if the city would build one-half of a good bridge across the river, he would build the other half.' *Held* (a) that this was not varied by his afterwards saying that 'he wanted nothing to do with building it himself: he would rather the city would build it and he would pay half;' (b) that after the bridge had been built without objection, his representatives could not resist a claim against his estate for the payment of his share on the ground that the agreement to build a "good" bridge was too indefinite.

Where a citizen offers on certain conditions to open a street across his land for the public use, the acceptance of the offer by the proper authorities is a sufficient declaration of its necessity as a public improvement, if such a declaration is needed.

A private owner proposed to the common council to open a public street across his land if the city would help bridge a stream which it would cross.     *Held* that if the charter did not hinder, the council could accept such a proposition, and that the mere fact that the measure would benefit the lands of the owner made no difference.

Error to Calhoun.  Submitted June 20.  Decided Oct. 15.

JUDGMENT ON APPEAL from commissioners in probate. Appellants bring error.

*John C. FitzGerald* for plaintiffs in error.   Oral evidence tending to show an alteration in a contract is inadmissible, *Powers' Appeal*, 29 Mich., 509; *Moser v. White*, id., 60; *Seibrecht v. New Orleans*, 12 La. Ann., 496; the proceedings of a common council are presumed to be shown by their records, which oral evidence cannot supplement, *Stevenson v. Bay City*, 26 Mich., 46; *Hall v. People*, 21 Mich., 461; a common council cannot extend a street without first declaring the extension a necessary public improvement, Sess. Laws 1859, p. 63, §§ 17, 18; *Hoyt v. East Saginaw*, 19 Mich., 39; *McComb v. Bell*, 2 Minn., 295; the contracts of a common council are invalid unless for municipal and not private purposes, *Thomas v. Port Huron*, 27 Mich., 323; *People v. Salem*, 20 Mich., 470; *Sharpless v. Mayor*, 21 Penn. St., 168; *Brodhead v. Milwaukee*, 19 Wis., 624; *Colton v. Hanchett*, 13 Ill., 615; *Clark v. Des Moines*, 19 Ia., 199; *Hodges v. Buffalo*, 2 Den., 112; *Donovan v. Mayor*, 33 N. Y., 291; *Livingston County v. Weider*, 64 Ill., 427; *Randolph County v. Jones*, 1 Ill., 237; a promise of a reward for doing one's duty is illegal and void, Addison on Contracts, § 253; *Mills v. Mills*, 40 N. Y., 545; *Fuller v. Dame*, 18 Pick., 481; *Marshall v. B. & O. R. R.*, 16 How., 314; *Clippinger v. Hepbaugh*, 5 W. & S., 315; *Dudley v. Cilley*, 5 N. H., 558; a municipal corporation cannot expend public money unless for public necessity; but not for private advantage, *Hanson v. Vernon*, 27 Ia., 47; *State v. Wapello County*, 13 Ia., 405; *People v. McCreery*, 34 Cal., 432; *Hilbish v. Catherman*, 64 Penn. St., 154;

*Warren v. Henly,* 31 Ia., 31; *S. & V. R. R. v. Stockton,* 41 Cal., 149; *Bay City v. State Treasurer,* 23 Mich., 499.

*Arthur Brown* for defendants in error. A contract with an owner of lands specially benefited by it is binding on the owner of the lands, *Crockett v. Boston,* 5 Cush., 182; *Springfield v. Harris,* 107 Mass., 532; *Townsend v. Hoyle,* 20 Conn., 1; 1 Dill. Mun. Corp., § 382, n. 2.

MARSTON, J. This case came up in the circuit court upon an appeal from the allowance of the claim by the commissioners appointed to adjust claims against the estate of Thomas G. Duncan, deceased. A judgment was recovered in the circuit court and the case comes here upon writ of error.

The principal facts out of which this claim grew are, in brief, that Duncan was the owner of a tract of land in the city of Battle Creek which he desired to improve; that in April, 1870, he appeared before the common council of said city, and made a verbal proposition in reference to the building of a bridge across the Kalamazoo river, at the foot of Kendall street, and the extension of Kendall street across his land; that action was thereafter taken by the common council in reference thereto, his proposition was accepted and the bridge constructed, and it was claimed on the part of the city that it was entitled to recover out of his estate, in accordance with the proposition made by him and accepted by the city, one half the contract price of building the bridge, less the amount paid on Mr. Duncan's behalf during his lifetime.

It will not be necessary to discuss the several errors assigned separately and each at length; they raise certain legal propositions which we will proceed to consider.

*First.* That there was only one way by which the common council could act in the premises, viz.: by resolution, and that whatever action they did take is conclusively presumed to be evidenced by their record, and

that parol evidence is inadmissible to alter, add to, or supplement such record; that the court erred therefore in permitting oral testimony to be given of the proposition made by Mr. Duncan to the council, and in permitting Joseph G. Hoyt to give evidence of certain conversations which he afterwards had with Mr. Duncan in reference to the building of this bridge, and which, it is claimed, varied or changed the original proposition and contract, if any such contract were ever made.

The legal proposition asserted by counsel is correct as a general one; the difficulty arises in its application to the facts in this case.

The proposition submitted by Mr. Duncan to the common council was not in writing. It is true that the records of the council contain what purports to be the substance of that proposition. This was necessary in order to point to or make clear the subject matter in case the council should take any action in reference thereto. The proposition as made might be spread upon the record by the clerk, or it might be incorporated in a preamble or resolution adopted by the council, and thus become a part of their record. In either event it could not be conclusively presumed to contain the proposition made in all its details, and would not preclude Mr. Duncan or his representatives from showing what the proposition as actually made, contained, even although by so doing the record might be contradicted, added to, or varied. While the city would be concluded by the record evidence of the action taken by the common council, neither the city nor third parties could be by the recitals in the record of oral propositions made by third persons. Either party would be at liberty to prove by oral testimony the proposition actually submitted and acted upon. Of course the result of such a showing in some cases might establish the fact that nothing had in truth been agreed upon; that the proposition as submitted and the one acted upon and accepted were so dissimilar that the minds of the parties could not be

said to have met upon anything. Of course an oral proposition might be submitted, and as it appeared upon the record be changed or varied, and accepted or acted upon in its changed condition and yet bind the parties by ratification by the acts and declaration of the person making the proposition, after having been in any way made aware of the changes.

It was competent therefore to show, independently of the records of the council, the proposition made by Mr. Duncan in reference to the building of this bridge, and also the conversation which members of the council afterwards had with him in reference thereto, whether instructed to confer with him upon the subject or otherwise. *Detroit, Lansing & Lake Michigan R. R. Co. v. Starnes*, 38 Mich., 698; *Taymouth v. Koehler*, 35 Mich., 22.

*Second.* It is claimed that no contract whatever was shown to have been made; that the proposition made by Duncan was so indefinite and uncertain that it could not have or be given the force of a contract; that the proposition made was for a "good bridge," but did not state its size or class, whether foot, toll or suspension; whether it should be built of iron, wood or stone, nor the particular place where, or when it should be built or the expense or cost thereof, and that the report of the committee, and the action of the council thereon must necessarily be equally indefinite and uncertain, as the council could only accept or reject the proposition as made.

This last statement, as we have already said, is not strictly correct. The council could accept the proposition with such changes and modifications as was deemed best, and should the party afterwards be informed of the changes or conditions, and assent thereto, he would be bound thereby the same as though such changes or conditions had been contained in his original proposition. If an offer or proposition is made by a person to a corporation in relation to a matter within the scope of its

authority, and is accepted in a modified form, we know of no legal principle which would prevent both parties from carrying out the agreement in its new or accepted form, if they thought proper so to do.

In regard to the indefinite and uncertain nature of the proposition and acceptance, were this an action brought to enforce specific performance of the agreement or to recover damages from non-performance of the contract in not building the same, the objections urged would have some force. Such is not this case. Here the bridge has been built, no question is made as to the time, place or manner of its construction, or that it in any respect falls short of the kind of bridge contemplated by the parties. If Mr. Duncan simply stipulated for a "good bridge," leaving the kind of bridge and all the details to the council, and found no fault with the action taken by the council so far as known to him, it is now too late for his representatives to come in after they have obtained all he stipulated for, and because of the indefinite nature of his proposition decline to pay the stipulated price.

It was, however, urged that Mr. Duncan's proposition was, that "if the city would build one half of a good bridge across the Kalamazoo river, he would build the other half;" that the only evidence tending to change this proposition was that of Hoyt, who testified that as one of a committee appointed by the council "to confer with Mr. Duncan in reference to procuring timber for the bridge;" he had a conversation with him relative thereto; that Duncan said to him that he, Duncan, wanted nothing to do with building the bridge himself,—he would rather the city would go on and build it and he would pay one half of it. After this the council authorized one of its committees to advertise for bids for building the bridge, and let the contract under which it was constructed.

We think that this evidence in no way tended to change or modify the original agreement. The oral evi-

dence as to the proposition submitted by Mr. Duncan was that if the city would go on and build a bridge across the river, that he (Duncan) "would be to the expense of half the bridge,—building half the bridge." If this was the proposition made, then there was no change made, but we are of opinion that even if the language used by Mr. Duncan was that "if the city would build one-half of a good bridge across the Kalamazoo river, he would build the other half," the legal effect and construction thereof would be the same. It could not have been the intention that each should literally build one-half, any more than that if the members of the common council should themselves personally do the manual labor upon one-half the bridge, he (Duncan) would with his own hands construct the other half. Bridges are not usually constructed by piece-meal in that way. In the construction of bridges across rivers between different corporations on the lines of public highways, each builds one-half the bridge by paying one-half the expense thereof, but the bridge is constructed as a whole. So in this case the proposition to build one-half was but another way of saying that he would pay one-half the expense of its construction. This follows from the nature of the subject matter about which the parties were negotiating.

*Third.* It is also insisted that the council could not extend Kendall street without first declaring it to be a necessary public improvement; that until they had extended it across the river they could not contract to build a bridge there, as they only possessed power to build bridges upon public streets; that the declaration does not allege nor the proofs show that public necessity or even convenience required the building of this bridge, while it does appear that the object was to improve and render more valuable the lands of Duncan and increase their value.

There is no force in these objections. If the council
39 MICH.—42.

had been seeking, under the power of eminent domain, to open and extend this street there might be force in the objection. Where, however, a person, as in this case, offers upon certain conditions to throw open a street across his land for the use of the public, an acceptance of such proposition by the proper authorities is a sufficient declaration of its necessity as a public improvement, even if any such were needed; and the fact that the improvement would benefit the lands of private individuals could be no objection. It is frequently the case in all cities that parties owning lands which would be rendered more valuable by having a street opened and graded through the same, offer to open or permit to be opened a street on condition that the city will open and grade the street and build the necessary fences, and the power of the common council to accept such a proposition and proceed with the work we have never heard questioned. There can be no doubt of the power to accept upon such or similar terms, unless prohibited by some provision in the charter, which is not claimed in this case.

But it is said that such a proposition as the one made by Duncan, even if accepted by the city, would be void as being against public policy; that this council was the municipal legislature of the city, and the proposition appears upon its face to have been made in reference to legislative action; that if it was not the duty of the city to build the bridge they had no warrant for doing it. If it was their duty to build, Duncan's promise to pay a part of the expense was a promise to pay them a premium for doing their duty and therefore void; and that the corporation had no right to expend money unless the public exigency required it, and not for private advantage. Such in brief was the argument advanced.

We see nothing in the proposition as made, or accepted by the common council, which could be considered as contrary to public policy, or that the prop-

osition was made for the purpose of influencing the legislative action of the council in such a manner as to render the agreement void.

` This offer had no reference to a purely private matter. It had reference to the extension of one of the public streets of the city, and the erection of a public bridge on the line thereof free to and for the benefit of all the inhabitants of the city. The entire expense of the improvement contemplated may have been so great that the council may well have hesitated at that time to assume the entire burthen. The fact that private individuals would be benefited by the improvement, and that they therefore should offer to bear a portion of the expense, would make the improvement none the less a public one, or one that the common council should not then make, because of the offer.

Had the council proposed to build an inferior or temporary bridge, or one not considered fully adequate to meet the wants of the public, might not a portion of the citizens offer to contribute a portion of the expense of building a better and more ornamental one? Or might not the citizens on the line of a contemplated street offer to pave it if the council would open and grade it? Clearly we think this might be done, and that an offer so made, if accepted and acted upon by the council within a reasonable time, would be binding and obligatory upon the parties. The mere fact that it might be the duty of the city unaided to make the desired improvement would not render an agreement to aid void. *Stevens v. Corbitt,* 33 Mich., 461.

But it is said such a proposition influences legislative action and is therefore void. There are many ways in which a legislative body may be fairly and legitimately influenced. It is not the fact merely of influencing a legislative body, but the manner or method resorted to that is condemned. The reason why agreements to aid and influence legislation are usually held void as being contrary to public policy is that they tend to subject

the members to secret, improper and corrupting influences. No such reasons, however, exist in this case. Here the proposition was openly and fairly made in an honorable manner to the body itself; no promise, reward or private benefit was secretly or otherwise offered or presented to any of the individual members of that body. The only interest or inducement held out to them was a public one. In all this we can discover nothing secret, —nothing improper nor corrupting in its tendency.

It is unnecessary to examine the several cases cited by counsel for plaintiff in error. We should have no hesitation in following them in a case where we considered them applicable. The authorities cited by counsel for defendant are more directly in point and sustain the agreement in this case.

The judgment must be affirmed with costs.

The other Justices concurred.