First National Bank of Waterloo, Iowa, Appellee, v. L. E. Park, Appellant.

Contract to Furnish Assignment of Corporate Stock: construc-tion: *Performance.* Plaintiff bank held a note of defend-ant, and also a note of a third party secured by a deposit of corporate stock. Defendant's note was secured by a deposit of a note from the third party to defendant. It was agreed that defendant should assume the payment of the third party's note to plaintiff in consideration of plaintiff's obtaining from such third party an assignment of the shares of stock to be held as collateral not only for the note to plaintiff, but for the note to defendant also. Plaintiff procured an agreement that the stock be held as security for both notes, but no assignment good as against creditors of the third party, and one of such creditors attached the stock. *Held,* that by the agreement plaintiff was bound to procure an assignment valid against at-taching creditors, and an arrangement merely good between the parties was not a performance of the agreement.

Definiteness. The contract to procure an assignment was not void for uncertainty as to what kind of an assignment was intended.

Nonperformance: defenses. Where a bank holding certain stock as collateral security for a note undertook to secure an assign-ment thereof to be held as security for another note made by the owner of the stock to another debtor of the bank, the bank could not plead the existence of undisclosed conditions attached to the original deposit as an excuse for not performing its agreement.

Measure of damages on breach. It appearing from the evidence that the stock was worth its face value, the recovery of dam-ages for plaintiff's failure to procure a valid assignment could not be avoided on the ground that there was no criterion by which to determine the amount of damage.

Renewal of Note: when not waiver of counterclaim. A pre-sumption that a renewal of a note after the accrual of an al-leged counterclaim operated as a waiver of the counterclaim could not attach, when it was expressly stipulated at the time of the renewal that it should be without prejudice to the makers right to insist on his counterclaim.

*Appeal from Black Hawk District Court.*—Hon. A. S. Blair, Judge.

Tuesday, October 14. 1902.

The opinion states the case.—*Reversed.*

*Reed & Tuthill* for appellant.

*Boies & Boies* for appellee.

Weaver, J.—The plaintiff brings suit upon two promissory notes made to it by the defendant. Defendant admits the making and delivery of the notes, and, by way of counterclaim, alleges that in August, 1894, he was indebted to plaintiff in the sum of $3,000, to secure payment of which he had deposited with plaintiff a promissory note of $2,250 held by him against one Herbert Balcom; that at the same time the said bank owned and held a promissory note for $1,200 made by the Balcom Park Company, a corporation of which said Herbert Balcom was the sole stockholder; that payment of said $1,200 was secured by the guaranty of Balcom, and by the deposit as collateral with plaintiff of $4,000, par value, of the stock of the Le Mars Implement Company, a corporation located at Le Mars, Iowa; that an oral agreement was entered into between plaintiff and defendant by which defendant assumed the payment of the $1,200 note made by the Balcom Park Company, and in consideration thereof plaintiff agreed and undertook to procure from Balcom an assignment of the collateral stock above mentioned, to be held, also, as collateral for the payment of the note of $2,250; that Balcom consented to such transaction; that defendant thereupon made his own notes to the bank for the aggregate amount of the Balcom Park Company's note, of $1,200, and his own indebtedness, of $3,000, and plaintiff receipted to the defendant for the $2,250 note, also the

$1,200 note, and the 40 shares of stock of the Le Mars Implement Company, as collateral security; that plaintiff carelessly and negligently failed to procure a proper assignment of said stock from Balcom, or to have such assignment noted upon the books of the Le Mars Implement Company; that thereafter the Balcom Park Company assigned said stock to the Balcom-Walsh Company, in whose hands it was attached by creditors, and sold to satisfy their claims against the last-named company; that Balcom has since become insolvent; and that by reason of plaintiff's said negligence the note of $2,250 against Balcom owned by defendant, and held as collateral by the plaintiff, has become and is wholly worthless.    The plaintiff's reply to defendant's counterclaim, so far as material to the question before the court, was a denial of any agreement to procure an assignment of the collateral stock, and denial of any negligence or failure in respect to the matters alleged by the defendant.    The cause was tried to a jury, and the defendant, assuming the burden of proof, offered evidence in support of his counterclaim.    Without any extended recital of the testimony, it is sufficient to say that, in general, it tended to sustain the allegations of the counterclaim.    It is not disputed that the note made by plaintiff to defendant, of which the notes in suit are a renewal, was for the same indebtedness represented by the notes of $3,000 and $1,200, above mentioned, or that the bank receipted to defendant for the shares of stock as collateral.    The jury would also have been justified in finding from the evidence that this arrangement was made at the request of the plaintiff, and that, to bring it about, plaintiff, by its cashier, promised to obtain an assignment of said stock as collateral to the $2,250 note, in addition to the $1,200 note already secured thereby; that no assignment, other than such as was contained in the verbal agreement of Balcom and the possession of the certificates by plaintiff, was made or obtained until after the stock

had been attached by the creditors of the Balcom-Walsh
·Company; that by such attachment the collateral security
was lost, except to the amount of the $1,200 note of the
Balcom Park Company; and that said shares of stock from
·the time of the arrangement between plaintiff and defend-
ant to the date of the attachment were worth their face
value.    It is conceded in the pleadings that Balcom is
insolvent.

At the close of the plaintiff's case the plaintiff, with-
·out offering any testimony, moved the court .to direct a
verdict in its favor.    The motion is based on numerous
grounds, which may be condensed as follows:    That while
there is evidence tending to show, in general terms, that
·the bank agreed to procure an assignment of the stock,
·there is nothing to show the kind of assignment contem-
plated by the parties,—whether one which would be good
between the parties only, or one good against attaching
·creditors, or whether it should be written or oral,—and
that the alleged agreement is therefore void for uncertainty.
In further support of the motion it is said that there is no
evidence that the plaintiff ever promised or agreed to pro-
·cure any entry of the assignment of the stock upon the
books of the corporation; that there is no sufficient show-
ing of damage sustained by the defendant; that there is
no proper showing of the value of the stock, or the amount
which would have been realized to the defendant had the
·assignment been obtained before the attachment; that
·there is no showing of negligence on part of the bank;
and that it further appears that since the occurrences of
which defendant complains, and with full knowledge
·thereof, he has executed and delivered to plaintiff the re-
newal notes in suit, and has thereby settled and waived
his right of action, if any he ever had.    This motion was
·sustained by the trial court, and from the judgment entered
·upon such directed verdict the defendant appeals.

The motion to direct a verdict should have been denied. The general rule by which the holder or pledgee of collaterals is bound to exercise reasonable diligence and care to preserve them, and do whatever is necessary to protect the rights of the pledgor and make the security available, is well understood. *Whitten v. Wright*, 34 Mich. 92; *Bank v. O'Connell*, 84 Iowa, 377. But in this case it is not necessary to base our decision upon rights or duties which may be implied from a mere deposit of collaterals with a creditor. We have here not only the ordinary relations of a pledgor and pledgee of collaterals, but the obligations pertaining to an express agreement to procure an assignment of the stock. That there was evidence tending to establish such agreement is not seriously questioned by counsel, nor is it claimed that such agreement, if proven, is not supported by sufficient consideration. The objection raised by appellee, that, even if there was an agreement to obtain an assignment of the stock, there was no promise to have the transfer noted on the books of the corporation, does not impress us as meritorious. When plaintiff agreed to procure an assignment, it must be presumed that such promise included an undertaking to do all the acts which are necessary in law to make the assignment effectual for the mutual protection of the parties to the agreement. By the statute then in force, a transfer of the shares of corporate stock was not valid until regularly entered upon the books of the company. Code, 1873, section 1078. Until such entry was made, the rights of an innocent purchaser or attaching creditor were liable at any time to intervene to the entire destruction of the value of the collateral security. The very fact that the parties stipulated for an assignment of the shares, when they already had the certificates in their hands, indicates clearly that they understood the necessity of something more than a mere deposit of the papers; and to permit plaintiff now to say to the defendant, "It is true, I under-

took to get an assignment, but I did not promise to get one which would be worth anything to you against the claims of an attaching creditor," or to say, "My agreement to obtain an assignment did not specify whether it should be in writing or parol, or should be perfected by an entry upon the books of the corporation, and my promise is therefore void for uncertainty," is to perpetrate a manifest injustice by judicial pronouncement. Until a rightful demand for bread can be legally satisfied by the delivery of a stone, a doctrine of that kind should find no favor with the courts. If A, for a consideration duly received, contracts to procure the title to property for the benefit of B, his agreement is not void for uncertainty simply because the manner or method of such procurement is not specified; nor is it a sufficient performance to procure the mere shadow or promise of a title, which may be defeated the next moment by an attaching creditor or purchaser without notice. A contract will not be declared void for uncertainty unless after reading and interpreting it in the light of the circumstances under which it was made, and supplying and rejecting words necessary to carry into effect the reasonable intention of the parties, their intention cannot be fairly collected and effectuated. *Boykin v. Bank*, 72 Ala. 262 (47 Am. Rep. 408); *Fraley v. Bentley*, 1 Dak. 25 (46 N. W. Rep. 506); *Cole v. Edwards*, 93 Iowa, 477; *Long v. Mayor etc.*, 39 Mich. 323 (33 Am. Rep. 384); *Hyman v. Kelly*, 1 Nev. 179; *Husse etc., Transportation Co. v. Heinze*, 102 Mo. 245 (14 S. W. Rep. 756;) *Warren v. Winne*, 2 Lans. 209; *Lawrence v. Railroad Co.*, 32 N. Y. St. Rep. 75 (10 N. Y. Supp. 743. Nor is there in the contract before us such a lack of any criterion for ascertaining the amount of damages recoverable on a breach thereof as will render it void. If, for instance, the plaintiff had wrongfully converted the collateral security, or had wrongfully surrendered it to Balcom, to plaintiff's injury, no one would contend that it did not thereby incur a liability for the damages thus

occasioned, or that such damages were not capable of being measured or ascertained. The evidence tends to show that the stock was worth its face value of $4,000 when attached, and that defendant has had the benefit of it to the extent of the $1,200 note and interest assumed by him. It follows, therefore, of necessity, that his damage, if the jury finds him entitled to recover, was the difference between the value of the stock and the amount of the $1,200 note, or, rather, so much of said difference as is necessary to satisfy the $2,250 note, to secure which plaintiff undertook to obtain the assignment. It is suggested in argument that plaintiff, as the mere holder or depositary of the collateral, had no right or authority to have the proper entry of the transfer of stock made upon the company's books; but the rule to the contrary appears to be well settled even where such authority is not provided for by express agreement of the parties. The existence of such authority is impliedly recognized in *Moore v. Opera House Co.*, 81 Iowa, 45. See, also, *Spreckels v. Bank*, 113 Cal. 272 (45 Pac. Rep. 329, 33 L. R. A. 459, 54 Am. St. Rep. 348). We are not to be understood as holding that an assignment of the stock upon the company's books is essential to a valid pledge of such stock as collateral security (*Spreckels v. Bank, supra*), and if this were a case of a mere deposit of the certificates to secure the Balcom notes, without any additional agreement or understanding between the parties, a different question would be presented; and it is not necessary for us now to decide whether, under such circumstances, reasonable care in protecting such collateral would require the plaintiff to perfect a statutory transfer of the stock. The case we have to consider, as we have already pointed out, involves not only the deposit of the collateral, but an express agreement to procure an assignment to secure the payment of the $2,250 note; and that agreement, we are constrained to hold, required the plaintiff to do all those acts reasonably within

its power which were necessary, in law, to make the transfer of the stock valid and effective. Whether such agreement was in fact made; whether there had been a failure of performance by the plaintiff, and, if so, the amount of the defendant's damages,—were questions which, under appropriate instructions, should have been submitted to the jury.

The point made in plaintiff's motion for a verdict, that the notes in suit being given in renewal since the loss of the collateral security creates a presumption of settlement and waiver, would be good, but for the fact that the testimony tends to show that on making the renewal it was expressly understood that such acts should be without prejudice to defendant's right to insist upon his counterclaim. The presumption upon which plaintiff here relies is not conclusive, and may be rebutted by evidence that no waiver or settlement was in fact made.

It is also urged that the assignment which plaintiff undertook to procure was to be subject to the claim upon the stock already held by the bank to secure the payment of the $1,200 note, and that, as the terms upon which the certificates were originally deposited with the bank are not shown, it cannot be presumed that plaintiff has dealt with the collateral in any manner not authorized by such original agreement. This reasoning is ingenious, but not convincing. It is conceded that plaintiff obtained the certificates of stock originally as collateral security to the $1,200 note, and, in the absence of other evidence, the presumption, if any there be, is that the deposit was made in the ordinary manner, without special conditions. Moreover, it must be remembered that the $1,200 note was no longer in any proper sense the property of plaintiff, to deal with according to its own pleasure. The defendant had assumed the payment of such note, and given his own note instead, thus becoming the principal debtor; and the plaintiff thereafter continued in posses-

sion of said note, not as its own, but as the property of the defendant, left with it by him to secure his own debt. In no other way can the transaction between the parties and the receipt given by plaintiff be reasonably interpreted. In any event, we do not understand how any secret or undisclosed conditions attached to the original deposit could affect the defendant's rights under the agreement alleged by him. Plaintiff undertook to procure an assignment to protect the $2,250 note, and cannot be heard to say that by reason of some agreement previously entered into between itself and Balcom, and not disclosed to defendant, it is excused from performing its trust.

For the reasons above given, the judgment of the court below is reversed, and the cause remanded for a new trial. —REVERSED.