P. J. TIERNEY, Trustee, v. PATRICK LEDDEN, Appellant.

**Corporations:** PLEDGE OF STOCK: LIABILITY OF HOLDER FOR PRICE. Proof
1 by a trustee in bankruptcy that corporate stock had been issued and not paid for makes a *prima facie* case, in an action by the trustee against the holder of the stock, for the balance due. And in the absence of a statute the fact that stock was issued to and retained by one, simply as security for a debt, would not be a defense to such action, where it was issued directly to the pledgee as owner and it so appeared on the books of the corporation.

**Same:** CORPORATE STOCK HELD AS SECURITY: EXEMPTION FROM ASSESS-
2 MENT: STATUTES. By the statutes of this state the holder of corporate stock as security is exempt from liability for assessments thereon; and this is true even though the books indicate that the stock was issued to him directly as owner, notwithstanding the provision requiring the Secretary of the corporation to keep a record of stock transferred as collateral security; as under the statute the exemption is not limited to cases where a record of the transfer has been made on the corporation books.

*Appeal from Webster District Court.*—HON. C. G. LEE, Judge.

THURSDAY, JULY 1, 1909.

ACTION on subscription to capital stock resulted in judgment as prayed. The defendant appeals.—*Reversed.*

*Healy & Healy,* for appellant.

*Chantland, Hadley & Graham* and *P. F. Nugent,* for appellee.

LADD, J.—The plaintiff is the trustee in bankruptcy of the Ryan Implement & Hardware Company, and this action is based on an alleged unpaid balance owing for five shares of its capital stock at the par value of $100 per share. The company was organized early in 1901, and after repeated efforts induced defendant to contract for five shares of stock at the par value of $100 each and execute his note to the company therefor in the sum of $500. The stock was issued, and the note immediately deposited with a bank as collateral security of a loan to the company. This was January 11, 1902, and as a part of the transaction the manager of the company represented that it was in great need of money and agreed that, if defendant would take the stock and give his note therefor, this would be an accommodation, and the company, upon the return of the certificate, would give the note back at the end of a year; the note to be used as stated. Both the manager and the agent assisting in the sale of the stock promised to see that the arrangement should be carried out. Defendant was notified by the bank shortly before the note fell due and called on the manager to take it as agreed. He responded that collections could not be made, as the crops had been poor, and proposed that defendant give a renewal note which, when due, the company would pay. Defendant had brought back his stock and laid it on the secretary's table, but finally renewed the note and took the stock with him; the manager saying he would have to retain the stock until the company took up the note. As it was never paid, the bank delivered it to the trustee, when the company was declared a bankrupt, and defendant retained the stock, and the company's books at all times indicated that he was owner thereof. A dividend of thirty-three cents on a dollar of indebtedness of the company

has been declared, and the proceeds of the remaining property will scarcely satisfy the costs, so that the aggregate amount owing creditors will greatly exceed the amount of this claim.

Two conclusions are necessarily to be drawn from the facts stated: (1) That defendant never surrendered the certificate of stock, and (2) that he received and retained it as collateral security of a loan of the $500. True, he offered to surrender it, and even laid it on the table of an officer of the company; but this was done in demanding the return of the note, and immediately upon the renewal of that instrument he picked up the certificate and kept it. That he had no thought of yielding the certificate for cancellation save upon the surrender of the note is manifest. That defendant permitted the company to retain a couple of dividends it declared is entirely consistent with the finding that he was merely holding the stock as collateral security, for it does not appear that he kept up the interest on the note. That this was executed merely as an accommodation to the company, and that it was the purpose of the manager as well as of the defendant that the certificate of stock be issued and held as collateral security, is not open to controversy. Though that term was not employed, the purpose, as stated, is necessarily to be inferred from what was said and done.

That the company had the power to handle its stock as it did may, for the purposes of the case, be conceded. See *Wisconsin Lumber Company v. Tel. Co.,* 127 Iowa, 350; *State v. Higbee Company,* 130 Iowa,

1. CORPORATIONS: pledge of stock: liability of holders for price.

69; *Rollins v. Carriage Company,* 80 Iowa, 380. And the authority of the manager to enter into the agreement with defendant is not questioned. Proof that the stock had been issued and had not been paid for made out a *prima facie* case for plaintiff. *Calumet Paper Co. v. Stotts Inv. Co.,* 96 Iowa, 147. And in the absence of the statute, the

circumstance that the stock was issued to or retained by defendant as security for a debt would be no defense, as the stock was issued directly to him as to an owner and so appeared on the books of the company. *Hale v. Walker*, 31 Iowa, 344. The theory of this is well stated *In re Noyes·Bros.* (D. C.) 136 Fed. 979: "Where the pledgee of stock represents himself to the creditors of a corporation as a stockholder, where the creditors relying upon this representation, and have acted upon it, to their hurt, he is held estopped, though his true status is known to the corporation. By some artificial reason, the books of the corporation had been deemed to be a representation of the ownership of the stock, and if, with his consent, the person is therein described as a stockholder, he is deemed to have joined in the representation. By another legal fiction, all creditors of the corporation are presumed to have become so in reliance upon the representations contained in the corporation's books. Hence any one who appears on the corporate books as stockholder has been held to be estopped as against any and all creditors, from disputing the individual liability which by statute attaches to the stockholder. A pledgee may be bound by this estoppel as well as any other person. He is not held liable as pledgee; but his status as pledgee does not protect him from that liability which attaches to other persons not stockholders. If he has permitted himself to appear upon the corporation's books as the owner of stock, he is held individually liable where individual liability ordinarily attaches to the pledgor." And such is the voice of authority generally. *Germania Nat. Bank v. Case*, 99 U. S. 628 (25 L. Ed. 448); *Andrews v. National Foundry Co.*, 76 Fed. 166 (22 C. C. A. 110, 77 Fed. 774, 23 C. C. A. 454, 36 L. R. A. 139), and cases collected in note; 3 Thompson, Corporations, sections 3213, 3214.

There seems to be some conflict in authority as to whether, in the absence of statute, a pledgee of stock will

be liable if this relation is disclosed on the transfer books of the company. See *Pauly v. State Loan & T. Co.,* 165 U. S. 606 (17 Sup. Ct. 465, 41 L. Ed. 844), and *National Com. Bank v. McDonnell,* 92 Ala. 387 (9 South. 149). In several states the holder of stock as collateral security is exempted from liability at the suit of creditors, and such liability is fixed upon the pledgor. See: *Matthews v. Albert,* 24 Md. 527; *McMahon v. Macy,* 51 N. Y. 155; *Borland v. Nevada Bank,* 99 Cal. 89 (33 Pac. 737, 37 Am. St. Rep. 32); *Burgess v. Seligman,* 107 U. S. 20 (2 Sup. Ct. 10, 27 L. Ed. 359). In Massachusetts it is provided that: "In transfers of stock as collateral security, the debt or duty which such transfer is intended to secure shall be substantially described in the deed or instrument of transfer. A certificate of stock issued to a pledgee or holder of such collateral security shall express on the face of it that the same is so holden; and the name of the pledgor shall be stated thereon, who alone shall be responsible as a stockholder." In *First National Bank v. Hingham Mfg. Co.,* 127 Mass. 563, it was held that to exempt the holder of shares from liability as a stockholder the forms prescribed in the above statute must be followed.

The statute of this state differs from that quoted, as

2. SAME: corporate stock held as security: exemption from assessment: statutes.

well as others, in that, though it indicates the intention to exempt the holder of stock as collateral security, the liability of the pledgor is not expressly declared. The portions of the Code bearing on the inquiry may be set out:

Sec. 1627. No certificate or shares of stock shall be issued, delivered or transferred by any corporation, officer or agent thereof, or by the owner of such certificate or shares, without having indorsed on the face thereof what amount or portion of the par value has been paid to the corporation issuing the same, and whether such payment has been in money or property.

Sec. 1631. . . . In suits by creditors to recover

unpaid installments upon shares of stock against any person
who has in any manner obtained such stock of the corpora-
tion, the stockholder shall be liable for the difference be-
tween the amount paid by him to the corporation for said.
stock and the face value thereof.

Sec. 1626. The transfer of shares is not valid, ex-
cept as between parties thereto, until regularly entered
upon the books of the company, showing the name of the
person by and to whom transferred, the number or other
designation of the shares, and the date of the transfer;
but such transfer shall not exempt the person making it
from any liability of said corporation created prior thereto.
Its books must be so kept as to show the original stock-
holders, their interests, the amount paid on their shares,
and all transfers thereof; which books, or a copy thereof,
so far as the items mentioned in this section are concerned,
shall be subject to the inspection of any person desiring
the same. When any shares of stock shall be transferred
to any person, firm or corporation as collateral security,
such person, firm or corporation may notify in writing the
secretary of the corporation whose stock is transferred as
aforesaid, and from the time of such notice, and until
written notice that such stock shall have ceased to be held
as collateral security, said stock so transferred and noticed
as aforesaid shall be considered in law as transferred on
aforesaid, and from the time of such notice, and until
out any actual transfer on the books of the corporation of
such stock. In such case, it shall be the duty of the secre-
tary or cashier of the corporation or of the person or firm
to which such stock shall have been transferred as col-
lateral security at once, upon its ceasing to be so held, to
inform the secretary of the corporation issuing such stock
of such fact. The secretary of the company whose stock
is transferred as collateral shall keep a record showing such
notice of transfer as collateral, and notice of discharge as
collateral, subject to public inspection. No holder of stock
as collateral security shall be liable for assessments on
the same.

It will be noted that the first of the above sections
was violated, in that the certificate did not indicate that it
was issued as security; and the last in that the company

did not disclose that nothing had been paid for the stock, nor did the books show that it was held as collateral security. But the design of the last-quoted section was to enable stockholders to hypothecate their shares of stock without cancellation thereof and the issuance of new stock, and yet protect the pledgee against the claims of the creditors of the pledgor and purchaser without notice. *Moore v. Marshalltown Opera House Company,* 81 Iowa, 45; *Ft. Madison Lumber Co. v. Batavian Bank,* 71 Iowa, 270; *Ottumwa Screen Co. v. Stodghill,* 103 Iowa, 437; *First National Bank v. Park,* 117 Iowa, 552. What precedes the clause declaring that "no holder of stock as collateral security shall be liable for assessments on the same" does not purport to limit it in any way. Had the design been that only holders of such security who have complied with the provisions preceding should be exempt, the Legislature easily could have imposed that limitation. The provision is sweeping in its terms, and, as there is nothing in the context indicating that it was intended that the exemption be limited to cases where entry in the company's books have been made, it must be given full effect. The clause quoted from section 1631 does no more than state the measure of recovery whenever this may be had in such cases, and is not inconsistent with that extracted from section 1626. To the suggestion that this construction may encourage the fraudulent manipulation of stock to avoid liability it is enough to direct attention to the provisions of section 1631 with reference to transfers with intent to defraud creditors. In any event, our duty ends in construing the statute in accord with the manifest purpose of the lawmakers which, as seen, results in exempting the holders of stock as collateral security from liability as stockholders.

It follows that the court erred in not dismissing the petition.—*Reversed.*