*ALBANY, Dec. 1835.*

Jenkins v. Wild.

---

## JENKINS and others *vs*. WILD & JENKINS.

All decrees and orders of the court of chancery not capable of *enrolment* are *interlocutory* within the meaning of the statute *limiting appeals*.

The party conceiving himself aggrieved has fifteen days after notice to appeal from an interlocutory decree or order; and the notice to be effectual must be a regular formal written notice.

MOTION to quash an appeal. In May, 1829, Seth Jenkins filed a bill in chancery for the partition of certain lands lying on the *south* side of a certain creek called *Abraham's creek*, on which was erected a factory, claiming to be the owner of *one-fourth* of the premises, and stating that *another fourth* was owned by John F. Jenkins, and the *two remaining fourths* by James Wild. In June, 1829, Wild filed a bill to foreclose a mortgage executed to him by Seth Jenkins of his undivided fourth of the above premises; and a similar bill against John F. Jenkins to foreclose a mortgage executed by him and his wife, of his undivided fourth of the premises. In July, 1829, Wild also filed a bill, charging that Seth Jenkins, John F. Jenkins and himself were the owners of certain other lands lying on the *north* side of above creek, on which also was a factory; that they held as tenants in common in the same proportions as in the

---

* See note at commencement of case.

property on the *south* side of the creek, praying a partition. The bill also alleged a copartnership between him and the Messrs. Jenkins, and prayed an account.   The bills for fore-closure were taken *pro confesso* in August, 1829, and a sale of the mortgaged premises ordered, which was subsequent-ly suspended on the Messrs. Jenkins giving security for the payment of the mortgage monies, and of such sums as should finally be found due from them on an accounting, &c.   In March, 1830, the Messrs. Jenkins filed a bill against Wild in the nature of a bill of review, charging errors in the ac-counting upon which the balances were ascertained, for the payment of which the mortgages were executed.   In Au-gust, 1831, Seth Jenkins died, leaving a wife and several children ; whereupon a bill of revivor was filed, making the widow and children of Seth Jenkins parties.   An an-swer was put in by Wild to the bill of revivor, a replication filed, and a stipulation entered into as to testimony.   In July, 1833, a master of the court of chancery reported a balance of $3215,10 due to Wild, exclusive of the moneys due on the mortgages.   Upon the coming in of this report, the suits were all brought to a hearing together, upon the pleadings, proofs and master's report, and on the 12th Sep-tember, 1834, the chancellor *decreed*, 1. That the property on the *north* side of the creek be sold, that out of the proceeds a certain judgment, a *lien* upon the property, be paid, and that certain other payments to third persons be made, and that the residue be paid into court ; 2. That partition be made of the property on the *south* side of the creek, spe-cifying the rights of the several parties, subject to the mortgages, that the premises be sold at the same time un-der the several decrees of *partition* and *foreclosure*, that one half the proceeds be paid to Wild, that out of the other half of the proceeds Wild be paid the amount due on the mortgages, and that the residue be paid into court ; 3. That the master *re-state* the accounts, &c. and on confirmation of his report that either party may apply for distribution of the funds, &c.   Among other things the chancellor de-creed that the errors alleged in the bill of review were not sustained by proof, and dismissed the bill with costs.   From this decree an appeal to this court was entered on the

25th October, 1834, which was moved to be quashed on the ground that it had not been entered *within fifty days.*

*D. B. Tallmadge,* for the appellants, insisted that as the decree made by the chancellor, settled all the principles upon which the rights of the parties depended, and what remained to be done was mere matter of accounting, which necessarily must conform to the principles already settled, the decree must be considered as a *final* decree within the meaning of the statute limiting appeals, and that consequently the appellants had *two years* within which to prosecute their appeal; but if the decree was to be considered as merely *interlocutory,* then he insisted that the appellants had *fifteen days* after service of notice of the decree, and such notice not having been given, the parties were in time.

*C. P. Bushnell & S. Stevens,* for the respondents, insisted that the decree was *interlocutory* and not *final,* and cited *Kane* v. *Whittick,* 8 *Wendell,* 219. They also read affidavits showing that notice of decree had been given to the guardian *ad litem* of the infants heirs of Seth Jenkins, and that the solicitor of the other appellants had knowledge of the decree more than fifteen days previous to the appeal, he having aided in the drawing of the decree.

The following opinion was delivered :

By Chief Justice SAVAGE. The first question is whether this is a final decree between the parties, from which an appeal may be brought in two years; or whether it is interlocutory, from which an appeal must be brought within 15 days ?

The case of *Kane* v. *Whittick,* 8 *Wendell,* 219, contains nearly all the authorities on this point. In that case Whittick filed a bill, charging that an absolute deed executed by his grand-father was intended as a mortgage, and prayed a discovery and account. Issue being joined, the chancellor decreed that the deed was intended as a mortgage, and directed an account to be taken before a master. The decree was made in 1828. The parties appeared before the master;

he reported; the cause was heard on the report in 1830, and a decree for execution to collect the sum reported to be due. On the hearing, the defendants below (the appellants in this court) did not appear. They appealed, and their appeal was dismissed, because the *final decree* in 1829 was *taken by default,* and no appeal was made from the interlocutory decree of October, 1828, within 15 days. Mr. Justice Sutherland and Mr. Senator Beardsley delivered opinions, stating the principles of that decision. They both refer to *Harrison's Chancery,* and adopt the definition there found of a *final* and an *interlocutory* decree: "A decree is final when all the circumstances and facts material and necessary to a complete explanation of the matters in litigation are brought before the court, and so fully and clearly ascertained on both sides, that the court is enabled, upon a full consideration of the case made out and relied upon by each party, *finally* to determine between them according to equity and good conscience." Sutherland, J. remarks that a decree does not become final because it settles one or more of the material questions involved in the case, if any other material fact or question remains undisposed of. Senator Beardsley remarks of the case before him, that the decree of 1828 was not a final decree within the meaning of the statute; it could not be enrolled; it did not settle all the rights of the parties; accounts were to be taken, and equities were reserved until the coming in of the master's report. In that case the main point had been decided, to wit, that the deed absolute on its face was really but a mortgage; but the amount to be paid by one to the other, could not be settled until the coming in of the master's report. In this case all the principles have been settled between the parties: that partition shall be made, and the mortgages foreclosed by a sale of the premises; that the liens upon the property shall be paid by the master from the proceeds of the sale, and the balance brought into court—the master to make a report, upon which a subsequent decree was necessary to be made. Can there be a decree subsequent to a final decree? The term *final* purports that it is the last decree which is necessary to be entered to give to the parties the full and entire benefit of the judgment of the court. The cases of *Travis* v. *Waters,* 12 *Johns.*

ALBANY,
Dec. 1835.

Jenkins
v.
Wild.

*R.* 500, and *Jaques* v. *The Methodist Episc. Ch.,* 17 *id.* 558, lay down the same rule as to what decrees are final and what interlocutory. But it seems to me that all these definitions want one qualification suggested by Senator Beardsley, to wit, that a decree, to be final, must be capable of enrolment. The Revised Statutes, 2 *R. S.* 605, § 78, declare that "all appeals from final decrees of the court of chancery shall be made within the same time *after the enrolment of any such decree* as herein prescribed for bringing writs of error upon judgments at law," &c.; and § 79: "all appeals from any other order or decree of the court of chancery, including decrees for the general costs of the cause, shall be made within fifteen days after notice thereof shall have been given to the party against whom such order or decree shall be made, or to his solicitor." The section of the statutes of 1813 which are thus revised is in these words, as far as relates to decrees: "All appeals from the said court of chancery, except those from final decrees, shall be made within fifteen days after making the sentence, judgment, decree or order appealed from; and all appeals from final decrees in the said court of chancery, shall be brought within five years after making such decree, and not after." The period of limitation *then* commenced from the *making* the decree—now from the *enrolment.* The term *enrolment* is not applicable to an interlocutory decree or order, not to any but a final decree. It seems to follow that none are final decrees, but such as are capable of enrolment. All others are but interlocutory, although they do decide the principle in controversy. Proceedings at law are perhaps not entirely analogous, but they are sufficiently so to illustrate my ideas. No writ of error lies until final judgment is rendered. A report of referees or the verdict of a jury are not the judgment upon which a writ of error lies, and yet they finally settle the rights of the parties, unless set aside; they are, strictly speaking, but interlocutory proceedings, although the whole case has been considered and decided upon its merits. A decision of the court, either actual or constructive, is necessary to render a judgment. So I apprehend under our statute, a decree, to be *final,* must be capable of *enrolment.* All previous decrees are but interlocutory, although

they discuss and decide the point or points of controversy— particularly is this so as to such decrees which refer any matter to a master, where facts must be ascertained and a report must be made before the rights of the parties are completely and finally settled. 2 *R. S.* 181, § 91, 92, 93, point out the mode of enrolment by attaching all the papers, including the taxed bill of costs. Execution issues upon final decrees directing the payment of any debt or damages. No such process could issue in this case, for the amount to be finally paid was not settled, nor was there any enrolment. 2 *R. S.* 183, § 104.

According to the old definition of a final decree, the decree in these causes was but interlocutory, except in the bill of review. That was dismissed, with costs. I can see no reason why the decree, so far, might not be enrolled; and in that suit there was no reference to a master—no fact to be ascertained; the bill was dismissed and costs awarded; that was final—nothing more was to be adjudicated between the parties. With the exception just stated, the decree in these causes was in my judgment interlocutory; and an appeal, to be effectual, must have been brought within fifteen days after notice thereof was given to the party appealing. This brings me to the second question in the case.

Had the appellants notice of the decree of 12th September, 1834, more than fifteen days before the 25th of October, when the appeal was filed? It is not pretended that any written notice has been given to the appellants, but it is contended that the notice mentioned in the statute means knowledge; and the case of *The North American Coal Co.* v. *Dyett,* 4 *Paige,* 273, is cited to sustain that position. That was an appeal from a vice chancellor to the chancellor. The phraseology of the statute under which that appeal was made is somewhat different from that which regulates the present proceeding. The statute regulating appeals from vice chancellors is as follows : " Any party complaining of any interlocutory or other order previous to a final decree made by any vice chancellor, may, within fifteen days *after notice of such order,* appeal therefrom to the chancellor." Upon this statute, the chancellor decided in the above case, that where the appellant himself draws up and enters the order, he has

ALBANY,
Dec. 1835.

Jenkins
v.
Wild.

notice in fact of the order, at the time he so enters the same ; and it is not necessary for the adverse party to give him a formal notice to limit his right of appeal. It may fairly be inferred from the remarks of the chancellor, that had the order appealed from been entered by the adverse party, a formal written notice would have been necessary to limit his right of appeal. It will be seen, by comparing the two statutes, that there is a difference in the phraseology. The appeal from the vice chancellor must be brought within fifteen days *after notice of such order.* An appeal from an interlocutory order or decree of the chancellor must be made within fifteen days *after notice thereof shall have been given to the party against whom such order or decree shall be made, or to his solicitor.* Although it were admitted that in the first case notice means knowledge, it by no means follows that the notice in the second case means knowledge or information of any kind, but a formal notice. It is *notice to be given* to the party or his solicitor. Notice, to limit the right of appeal, must be given. This implies a positive act of the party in whose favor the decree is made. It is highly proper that such should be the practice. Notice in such a case ought not to depend upon casual information, or an advertisement in the newspapers. Such notice certainly cannot be considered notice given by one party to the other. It is clear to my mind that the legislature intended a regular formal *written notice.* Possibly the party entering the order or decree would be estopped, as in 4 *Paige,* 273, from alleging that he had not notice of his own acts ; but that doctrine is not applicable to this case. The statute does not require notice to be given *to* the prevailing party. I am therefore clearly of opinion that no notice *was given* to the administrators, nor to any of the parties against whom the decree was entered, unless it be Mr. Williams, who acted as guardian *ad litem* to the widow and infant heirs of Seth Jenkins, deceased. It cannot be denied that Mr. Williams had actual knowledge, but if I am right in supposing that to limit the right of appeal formal notice must be given by the prevailing party to the party against whom it is entered, then, as no such notice has been given, even Mr. Williams is in season to appeal. Suppose in the supreme court, when the plaintiff's at-

ALBANY,
Dec. 1835.

torney files his declaration, the defendant's attorney is present in the clerk's office, and sees the rule to plead entered, he is not bound to take notice of it until he receives a written notice from the plaintiff's attorney ; and a default entered without notice, but founded upon the actual knowledge of the defendant's attorney, would be set aside as irregular. The same rule applies here, if I am right in supposing that a *written notice* is required by the statute regulating these appeals from interlocutory orders in the court of chancery. But if I am mistaken as to the guardian's right to appeal, are the administrators to be deprived of their appeal by joining with the guardian ? I think not. Their interests are not joint. The administrators represent the personalty of the estate of Seth Jenkins, and the guardian but the widow's rights and a portion of the heirs, and their interest in the realty.

I am of opinion that the motion to dismiss the appeal be denied.

                      