A. A. MOORE, Appellee, v. THE MARSHALLTOWN OPERA-HOUSE COMPANY *et al.*, Appellants.

1. **Execution:** LEVY ON CORPORATION STOCK: METHOD. Under sections 2967 (subd. 3) and 3050 of the Code, an execution can be levied upon stocks in a corporation only by notifying the president, or other head of the company, or the secretary, cashier, or other managing agent thereof, of the fact that the stock has been levied upon; and such notice must be in writing. Mere oral notice, with a writing upon the back of the stub of the certificates in the stock book, is not sufficient.

2. ————: ————: PRIOR TRANSFER: SUFFICIENCY. Under section 1078 of the Code, which provides that a transfer of shares in a corporation is not valid, except as between the parties thereto, until it is regularly entered on the books of the company, *held* that an entry by the secretary of the company, in the stock book, that the shares had been assigned as collateral security, was sufficient to defeat a subsequent levy of an execution upon them by the creditors of the assignor.

*Appeal from Marshall District Court.*—HON. JOHN L. STEVENS, Judge.

SATURDAY, OCTOBER 11, 1890.

THIS action involves the question as to the rightful ownership of two and one-half shares of the capital stock of the Marshalltown Opera-House Company. The plaintiff claims to be the owner thereof by virtue of a purchase at sheriff's sale on an execution against one F. J. Peterson; and the defendant, the First National Bank of Marshalltown, claims said stock as collateral security for a debt owing by said Peterson to said bank. The opera-house company is a corporation; and the plaintiff, by this action, claims that he is entitled to a decree declaring his right to the stock superior to the claim of the bank, and an order requiring the opera-house company to transfer said stock to him on the books of the corporation. A decree was entered for the plaintiff, and defendants appeal.

*Binford & Snelling*, for appellants.

*J. M. Whittaker*, for appellee.

ROTHROCK, C. J.—The cause was submitted to the court below upon an agreed statement of facts, from which it appears that F. J. Peterson was the owner of two and one-half shares of the capital stock of the Marshalltown Opera-House Company. He borrowed one hundred and twenty-five dollars of the First National Bank of Marshalltown, and duly assigned his certificates of stock to the bank as collateral security for the money borrowed. The plaintiff Moore was the owner of a judgment against Peterson, upon which judgment he caused an execution to be issued to the sheriff of Marshall county. The execution was placed in the hands of a deputy sheriff for service. The cashier of the bank was also secretary of the opera-house company. On the thirty-first day of October, the deputy sheriff went to the bank and requested the secretary of the company to give him the stock book of said company. The secretary pointed to where it was, and the deputy took the book, and turned to the stub in the book from which the certificate of Peterson had been detached, and then and there verbally notified the secretary "that the stock is levied on" by virtue of the execution in his hands; and the secretary, in reply, verbally notified the said officer that the stock of Peterson had been transferred to the bank as collateral security. Thereupon, the secretary, at the request of said officer, wrote in said book, and on the back of the stub from which Peterson's certificate had been detached, the following words : "Levied on October 31, 1888, by virtue of an execution in favor of A. A. Moore against F. J. Peterson, district court of Marshall county, Iowa." To this writing, the deputy sheriff, in the presence of the secretary, affixed the following signature : "J. S. Hixon, Sheriff, by H. D. East, Deputy." While writing said indorsement on the stub, the president of the bank exhibited the certificate of stock to

*1. EXECUTION: levy on corporation stock: method.*

said deputy, and the assignment thereof by said Peterson, and told said deputy that said stock was still held by said bank as collateral security. The stock book did not then show that said stock had been transferred to any one by Peterson. On the next day, the secretary made an entry on the stock book showing that the said stock had been assigned to the bank as collateral security. Afterwards, and on the same day, the sheriff served written notices of the levy upon the bank and upon Peterson, and the bank gave the sheriff written notice that said stock was the property of the bank as collateral security.

It is provided by section 1078 of the Code that a transfer of shares in a corporation is not valid, except as between the parties thereto, until it is regularly entered on the books of the company. In *Fort Madison Lumber Co. v. Batavian Bank*, 71 Iowa, 270, it was held that a transfer of corporation stock is not valid as against an attaching creditor of the assignor without notice, unless the transfer is entered on the books of the company, as provided by section 1078 of the Code. Stocks or interest owned by a defendant in a corporation may be levied upon under an execution in the same manner as provided for attaching the same. Code, sec. 3050. Subdivision 3 of section 2967 provides that "stock in a company is attached by notifying the president or other head of the company, or the secretary, cashier, or other managing agent thereof, of the fact that the stock has been so attached." Until the notice required by this provision of the law is given, no valid levy can be said to be made. The stock in such cases is not capable of manual delivery. It cannot be seized and taken into the possession of the sheriff, and the law designates the notice to the president or other officer of the corporation as the levy. When the notice has been given, the levy is made, and it cannot be said to be a levy until it is given. It can have no force as a levy without the notice; and this notice implies more than a mere verbal declaration of the officer holding the writ. It should be a notice in writing. In *Mooar v. Walker*, 46 Iowa, 164, it is said :

"In order to obtain a lien on stock in an incorporated company, and prevent a valid transfer of the same, the creditor must follow the mode pointed out in the third subdivision of said section 2967, which requires that notice shall be served on the president, or other head of the company, or the secretary, cashier, or other managing agent thereof, of the fact that the stock had been attached." While it is true that it was not necessary to determine in that case that the notice should be in writing, yet that part of the opinion above quoted serves to show how this court then understood that a levy upon stocks should be made. And while in common parlance the word "notify" or "notifying," may sometimes mean a mere verbal communication, yet, when applied to an official act, we think it can have no other meaning than that it should be in writing. The deputy sheriff, in attempting to make the levy, evidently did not have the statute prescribing the form of levy in mind. It appears to us that he was of opinion that he ought in some way to seize Peterson's stock by examining the books and noting a levy thereon. On the next day, he took the necessary steps to make a levy by serving the notice required by law; but, before this was done, the stock was transferred to the bank on the books of the company, and the right of the bank as assignee of the stock was complete. It is claimed in argument that the transfer on the books of the company was not in form a compliance

2. —— : —— : with the law providing for a transfer. It prior transfer sufficiency. appears to us that it was sufficiently formal so far as to preclude an execution creditor from afterwards acquiring rights as against the assignee. In our opinion the plaintiff acquired no rights as against the bank by the alleged levy; and the decree of the district court is REVERSED.