[No. 7945.]

## McPhail v. City and County of Denver.

1. Constitutional Law—*Police Power—Keeping Dogs.* Nothing is more firmly settled than that the police power extends to the regulation of the keeping of dogs, and that the legislature may confer upon cities and towns such parts of the police power as it may deem proper. (249.)

2. Denver—*Charter Construed.* A charter power to "enact and enforce all ordinances necessary to protect life, health, and property, to declare, prevent, and summarily abate nuisances  *  *  *  to enforce ordinances by ordaining fines, and imprisonment, or both," within specified and reasonable limits as to amount and duration (City Charter sec. 17) is sufficient to warrant an ordinance imposing a license fee for the keeping of a dog, and a fine for the non-payment of the fee. (250.)

3. Municipal Corporations—*Enforcement of Ordinances—Notice.* Before one supposed to own a dog can be arrested and tried for his failure to pay a license tax prescribed by ordinance, he must receive official notice of his liability, and opportunity to pay the tax, or to controvert his liability. (251,
    Oral notice is not sufficient. (252.)

    Gabbert, C. J., Bailey, J., and Scott, J., dissent.

4. Notice—*Required by Statute.* A notice required or authorized by statute, in any legal proceeding, must be in writing; especially is this so where a statute or ordinance provides that the officer instituting the proceeding shall "*serve*" the notice. (252.)

5. —— *Waiver of Notice.* A notice required by statute or ordinance as the basis of a prosecution thereunder, cannot be waived. (253.)

*Error to Denver County Court.* Hon. H. S. Class, Judge.
    *Decision en banc on rehearing.*

Mr. Duncan McPhail, plaintiff in error, *pro se.*

Mr. I. N. Stevens, City Attorney, Mr. W. H. Bryant, Mr. H. J. O'Bryan, Mr. J. A. Marsh, Mr. William R. Kennedy and Mr. Paul Knowles, for defendant in error.

Teller, J., delivered the opinion of the court.

The plaintiff in error was convicted of violating section 750 of article 2, chapter 16 of the Municipal Code of

the City and County of Denver, which requires owners of dogs to pay to the city treasurer, annually, a prescribed sum for each dog so owned or kept in said city. He alleges error in the proceedings and seeks to reverse the judgment imposing a fine upon him.

Section 747 of the said Municipal Code reads in part as follows: "It shall be the duty of said dog license inspector to ascertain whether or not proper license has been paid for any dog, as provided by ordinance. In the event said license has not been paid, and the same evidenced by proper license receipt, tag or stamped collar, it shall be the duty of said inspector to serve every person owning, keeping or harboring any dog so unlicensed, with notice, warning such person to pay said license as the law provides, within twenty-four hours from the serving of such notice. If any person so served with notice shall fail to pay to the treasurer at his office within the time allowed by said notice, it shall be the duty of said inspector to summon into court said person as provided by ordinance."

A further section provides a penalty for the violation of the ordinance, and under this section a fine was assessed against the plaintiff in error.

It was admitted on the trial that plaintiff in error owned a dog, and had paid no license fee.

The principal error presented by plaintiff in error in the briefs is the refusal of the trial court to hold the ordinance to be in violation of the city charter, and of the Constitution of the State. In other words, it is contended that the city charter gives no authority to the city to enact the ordinance in question, and that such authority can not be granted without violating the Constitution.

As to the latter claim it is sufficient to say that no question is more firmly settled than that the regulation of the keeping of dogs is within the police power of the State, and that it may grant to cities and towns the right to exercise such parts of the police power as it may deem proper.

28 Cyc. 740; *Cole v. Hall,* 103 Ill. 30; *State v. City of To-
peka,* 36 Kan. 76, 12 Pac. 310, 59 Am. Rep. 529; *Sentell v.
New Orleans & C. R. R. Co.,* 166 U. S. 698, 17 Sup. Ct. 693, 41
L. Ed. 1169; *Jenkins v. Ballantyne,* 8 Utah 245, 30 Pac.
760, 16 L. R. A. 689.

Speaking on this subject Judge Dillon says:

"A license fee or tax is usually charged, and such li-
cense fee or tax is regarded as a proper exercise of the
police power, and not as a tax upon property. The author-
ity of a municipal corporation to pass ordinances on the
subject is sometimes conferred in express terms, but it has
also been sustained under such general grants of authority
as power to declare what shall be deemed to constitute a
nuisance and to abate the same, or to enact ordinances for
the protection of health, life and property, or to make by-
laws for the comfort and security of citizens." 2 Dillon on
Mun. Corp., 5th Ed., sec. 724.

Section 17 of the city charter contains the following
provisions:

"The council shall have power to enact and provide for
the enforcement of all ordinances necessary to protect life,
health and property, to declare, prevent and summarily abate
and remove nuisances; to preserve and enforce the good
government, general welfare, order and security of the
city and county and the inhabitants thereof; to enforce or-
dinances and regulations by ordaining fines not exceeding
three hundred dollars, or imprisonment not exceeding ninety
days, or both fine and imprisonment, for each and every
offense."

This, under the authorities, is sufficient to authorize
the ordinances in question, and they must be held valid.
The power to regulate is not limited, as plaintiff in error
contends, to dogs running at large. It extends, as many
cases hold, to the *keeping* of dogs, and that for obvious
reasons.

If, therefore, the proceedings under review were oth-

erwise regular and valid, the fine was lawfully imposed.

It appears from the record that a notice in writing was left at the house where plaintiff in error boarded, which notice, addressed merely to "occupant," was found by the tenant of the premises who kept a dog, and acting on the notice she went to the city hall and paid a tax on her dog.

No written notice was served upon plaintiff in error, and he never saw the notice left at the house. The city, to prove notice, put in evidence several conversations which the dog license inspector had with plaintiff in error in which the provisions of the ordinance requiring the license fee were discussed.

One of the grounds of the motion for a new trial was that the court erred "in holding that the verbal notice given by the plaintiff to the defendant was sufficient in law," and the overruling of that motion is now assigned as error.

The ordinance above quoted authorizes the inspector to summon a delinquent dog owner into court only after service upon him of notice to pay a license fee within twenty-four hours.

The proceeding thus to be begun, though a civil action in form, is penal in character, and may result in punishment by imprisonment.

There are cases too numerous to mention which hold that a proceeding which may result in the taking or encumbering of property, must be preceded by notice to the property owner, giving him the right to object, or to perform some act before it may be done by the public at his expense, as the case may be. It would seem, therefore, that before a person supposed to own a dog be subject to arrest, as in this case, and trial, he should have some official notice, and an opportunity to pay the tax, or at least to make the attempt to show that he does not own or keep a dog, if such be the fact. The propriety of such notice is recognized by the terms of the ordinance.

In *Brewster v. City of Newark*, 11 N. J. Eq. 114, it is

said: "Notice is certainly required, wherever a duty is imposed upon an individual, and a penalty fixed for non-compliance, unless by the law it is expressly provided that no notice need be given."

From these considerations, and from the language of the ordinance, it must be held that a notice was necessary before the action could be begun.

Was there in this case such notice given as the law requires?

The court, over defendant's objections, admitted testimony of oral notice to plaintiff in error, and that is the only notice claimed to have been given him. This also is assigned as error.

The general rule is that notice required by law to be given, is notice in writing. 29 Cyc. 1117.

In *Pearson v. Lovejoy,* 53 Barb. 407, it is said: "The rule is well settled that where a notice is required or authorized by statute, in any legal proceedings, it means written notice." See also *Norton v. City of N. Y.,* 16 Misc. 303, 38 N. Y. Supp. 90; and *State v. Supervisors,* 34 Wis. 169.

In such cases notice does not mean knowledge; it means the statutory instrumentality of knowledge. *Minard v. Douglas County,* 9 Ore. 206.

An English statute authorized a sale of goods after distress for rent, and notice thereof. Held that a written notice was required to render a sale valid. *Wilson v. Nightingale,* 8 Ald. & E. (N. S.) 1034.

The language of the ordinance clearly indicates that a written notice was intended. It does not direct the inspector to *notify* owners of dogs to pay the tax, but requires that he *serve* them with notice, a term which would hardly be used of oral notice.

It is said, however, that plaintiff in error waived the notice, by refusing payment on the ground that the ordinance was invalid.

But since the serving **of a written notice,** and not mere

knowledge on the part of the plaintiff in error, was the basis of the right to begin the prosecution; the service of notice was necessary as a jurisdictional fact, and there was and could be no waiver of such notice.

We conclude, then, that, written notice being necessary before proceedings can be begun by summons or arrest to enforce the ordinance, for want of such notice, the judgment is erroneous.

The former opinion is withdrawn, and the judgment vacated.

The judgment of the county court is reversed with directions to dismiss the proceeding.

Gabbert, C. J., Bailey, J., and Scott, J., dissenting.

White, J., specially concurring:

It will be observed that section 750 of the Municipal Code does not designate the specific date upon which payment of the license fee thereby exacted shall be made. It is by section 747 that the time of payment is definitely fixed, to-wit, "within twenty-four hours from the serving" of the notice upon the dog owner by the dog license inspector to pay the license fee. The failure to serve notice in no sense relieved the owner of the dog from the duty to pay the prescribed license fee, but he could not be liable to the penalty prescribed for non-payment, until the end of the annual period for which the license fee was exacted, or until the lapse of twenty-four hours after the service upon him of a notice, by the dog license inspector, to pay the same. In other words, no penalty could be recovered until default in payment of the license fee. As no written notice was served, and the annual period for which the license was sought to be collected had not expired, no default had occurred when the suit was brought. The fact that the owner of the dog persisted in asserting that he would not pay, in no sense invested the municipality with the right to

a forfeiture of the penalty, until the time of payment arrived, and default therein occurred. The question of waiver of notice is in no sense involved. The action to recover the fine was premature and I concur in reversing the judgment.

SCOTT, J., dissenting.

I agree with the conclusion reached in the majority opinion that the ordinance under which McPhail was charged, is constitutional, but I wholly disagree with the conclusion that the defendant did not have sufficient notice and that for such reason the case should be reversed.

Upon the question of notice the ordinance provides:

Sec. 747. "There is hereby created the office of dog license inspector, who shall be appointed by the mayor, and who shall serve until removed. It shall be the duty of said dog license inspector to ascertain whether or not proper license has been paid for any dog as provided by ordinance. In the event said license has not been paid and the same evidenced by proper license, receipt, tag or stamped collar, it shall be the duty of said inspector to serve every person owning, keeping or harboring any dog so unlicensed, with notice warning such person to pay said license as the law provides within twenty-four hours from the serving of such notice. If any person so served with notice shall fail to pay to the treasurer at his office within the time allowed by said notice, it shall be the duty of said inspector to summon into court said person as provided by ordinance."

It appears from the testimony that the city license inspector on the 18th day of September, 1911, discovered a female dog tied up at the premises where the plaintiff in error, McPhail, resided, and without any tag showing it to be licensed. The inspector called at the door of the house, and finding no person present, prepared the usual notice in such case, and pushed it under the door. This notice was not addressed to McPhail but to the "Occupant." There was at

the time a lady named Switzer residing at the premises, who found the notice and who also owned a dog. Mrs. Switzer took the notice to the proper authority and procured a license for her dog. McPhail did not see this notice. The inspector afterward learned that the dog licensed from the house number, was a male, and called again at the house on October 10th, and later had two conversations with McPhail. The first of these was at the City Hall, where McPhail said: "You sent a letter to Mrs. Switzer to pay her dog license. This female dog belongs to me. I ain't going to pay a cent; this ordinance is unconstitutional; I will fight it, if I have to go to the Supreme Court." Later, and on the 11th day of October, the officer called at the office of McPhail and again asked him to take out the license, where substantially the same conversation occurred. The complaint was filed on the 18th day of October.

Neither the ordinance nor the general rule of law in such case requires the serving of a written notice. The owner was twice personally notified by the proper officer and twice refused to take out the license. It is therefore idle to say that he did not have notice.

Under this state of facts McPhail had the sufficient and timely notice intended by the ordinance.

There is no better settled rule of law, founded upon public policy, than that all persons must take notice of the public laws by which they are governed, and that for such reason all persons interested in a transaction, made pursuant to a public statute, are chargeable with notice of all that the law contains. 21 Am. & Eng. Enc. Law, 2nd Ed. 588. McPhail therefore, was charged with notice of the provisions of the ordinance, its requirements and its penalties.

It is true that whenever by statute or ordinance, a duty is imposed on an individual, for the neglect of which he is subject to a penalty, notice is required before a liability arises, unless the contrary is expressly provided by law. But it is equally true that a waiver by the party for whose

benefit or protection notice should be given, is equivalent to notice, and dispenses with its necessity. 29 Cyc. 1117.

The record discloses that the question of notice is raised in this court for the first time. McPhail appeared in the trial court and entered his plea, and proceeded to trial, without in any manner suggesting the absence or insufficiency of notice. By this conduct and by his acts above recited, he clearly waived notice, written or otherwise. The rule as to appearance constituting waiver is well stated in the recent work of Bowers on the Law of Waiver, sec. 355, as follows:

"But the question whether an alleged appearance is to be held a waiver in such cases does not resolve itself into a mere determination of the intention of the defendant; for the appearance for the purpose of contesting the merits of the cause, whether by motion or by formal pleading, is a waiver of all objection to the jurisdiction of the court over the person of the defendant, whether he intended such waiver or not. And the same is true if he in any manner invokes the aid of the court without questioning its jurisdiction over his person. This is upon the well-established principle that he who has the right to object to such defects or irregularities must do so promptly and at the first opportunity before the party committing the error, has taken any further steps in the cause, or been misled into a reasonable belief that the objection is not to be urged."

It was said in *People ex rel. v. Albright et al.,* 23 Howard 306: "It can hardly be disputed, as a legal proposition, that a party may waive his right to a statute benefit, or protection; and though, without an express waiver of notice, the occupant or owner of cultivated or improved lands is entitled to the protection afforded by the notices referred to, the law does not, however, demand such absurd formalities to be gone through with as the actual service of notice, where the party who, only, is interested, himself waives or

releases. The waiver is equivalent to notice, and dispenses with its necessity."

"It may be further observed that the notice required in the contract was intended for the benefit of the plaintiff. His conduct and declarations were clearly equivalent to a waiver of any benefit intended to be secured to him by this notice. The object of it was to give him a preference in the purchase. He at no time manifested any intention to purchase nor claim the preference secured to him, but on the contrary he advised and insisted that the assignees of Stevens, of whom the defendant was one, should resist a recovery by Mr. Marshall, and retain the possession as long as practicable." *Wood v. Stewart,* 7 Vt. 147.

The notice required by the ordinance was solely for the benefit of McPhail in this case, and its purpose to prevent the owner of a dog from being mulcted by fine without first being advised of the demand of the city that he take out the license. This purpose was served in this case. The proper official twice demanded that McPhail take out the license and McPhail twice positively refused to do so.

Does anyone believe that the serving of a written notice would have been more effective than the personal pleading of the officer, or that there would have been a different result. Can it be said that defendant has been denied substantial justice. The law does not compel useless or foolish things. After McPhail had twice flatly refused to take out the license, it would have been useless and even foolish, to have served a written notice.

Precisely the same principle applies in this case as in case of refusal in advance to accept a tender. The words and conduct constitute a waiver.

The judgment should be affirmed.

I am authorized to say that Mr. CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY, concur in this dissenting opinion.

Decided March 2d, A. D. 1914. Rehearing granted

plaintiff in error November 2, A. D. 1914. Rehearing denied defendant in error June 7, 1915.