## SANG RYUP PARK v. BARBER, District Director of U. S. Immigration and Naturalization Service.

No. 31664.

United States District Court, N. D. California, S. D.

Aug. 19, 1952.

Wayne M. Collins, Marvel Shore, San Francisco, Cal., for petitioner.

Chauncey Tramutolo, U. S. Atty., Edgar R. Bonsall, Asst. U. S. Atty., San Francisco, Cal., for respondent.

GOODMAN, District Judge.

Upon a previous application for a writ of habeas corpus, #31425, D.C., 107 F.Supp. 603, the court enjoined the deportation of petitioner upon the ground that the finding of the Attorney General that the petitioner could be deported to Korea and not there be subjected to physical persecution, 8 U.S. C.A. § 156(a), was arbitrary and not based on any evidence of record. All the record evidence in #31425 was persuasive that the petitioner would be subject to physical persecution in Korea. However, we did not order petitioner's release from immigration detention nor did we forbid future deportation to Korea upon a different showing or in changed circumstances.[1]

1. See order of May 9, 1952 in case #31425.

On or about June 27, 1952, without any further hearings, the Commissioner of Immigration, as the delegate of the Attorney General, declared that petitioner would not suffer physical persecution in Korea and ordered his deportation. The instant petition followed.

At the hearing upon the petition, respondent produced and entered in evidence, in order to sustain the Attorney General's finding of non-persecution, the following letter from the Korean Ambassador to the Commissioner of Immigration:

"At the request of your office, I, as the representative of Korea in the United States, wish to make some comments with reference to a Korean national by the name of Park, Sang Ryup whom your service has been anxious to deport to Korea on charges of violating American Immigration regulations.

"It has been brought to my attention that Park, Sang Ryup has been contending that he would be subjected to physical persecution in South Korea if deported there. I will say, categorically and emphatically, that he will not be subjected to physical persecution in Korea so long as he abides by the laws of the country.

"You will be interested to know our court system and our legal system are such that the rights and privileges of individuals in Korea are well-protected, as in the United States. Even those citizens who have violated existing laws of Korea have full privileges of receiving protection and assistance to guarantee their rights."

The court thereupon stated that no showing had been made that the Attorney General's finding was based upon the Ambassador's letter or that the Attorney General or the State Department certified the letter to be a pledge or agreement on the part of the Government of Korea. For the purpose of procuring such evidence, the hearing was continued.

At the adjourned hearing, the only evidence presented was a letter of the State Department stating that the Korean Ambassador was the recognized representative of the Korean Government. Thus nothing not previously known was added. In that posture, the cause was submitted.

In this state of the record, the question is whether the Attorney General's finding is valid within the statute.

Consideration must first be given to the Congressional intent and purpose in including the "physical persecution" provision in the amendment to Sec. 20 of the Immigration Act of 1917. 8 U.S.C.A. § 156.

The "physical persecution" provision was not included in Sec. 23 of the Internal Security Act of 1950 (which amended Sec. 20 of the Immigration Act of 1917) until late in the legislative history of Sec. 23.[2] Considerations of fairness and humanity, as may be discerned from the discussions and reports referred to in note 2, motivated its adoption. The language of the statute leaves no room for doubt that Congress did not intend to vest in the Attorney General power to make any decision as to deportation he felt like making. For the Congress gave a mandatory inflection to its words. It said that *"No alien shall be deported * * * to any country in which*

2. The "physical persecution" clause was not in the amendment to § 20, originally formulated in H.R.10, 81st Congress, 1st Session, but discussions on the subject appear in the Transcript of the Hearings before Subcommittee No. 1 of the House Committee of the Judiciary, May 20, May 25, July 18, 1949; See also Minority Report on H.R.10, 81st Congress, 1st Session, House Report #1192.

The Senate in an amendment to H.R. 10, inserted the physical persecution provision. See Senate Report #2239 81st Congress, 1st Session.

H.R.10 died with the first session of the 81st Congress.

In the second session, S.B.4037, including the "persecution" clause passed the Senate. See Senate Report #2369, 2nd Session 81st Congress.

S.B.4037 was incorporated into H.R. 9490 and the latter became the Internal Security Act of Sept. 23, 1950. See Conference Report on H.R.9490, Report #3112, 81st Congress 2nd Session.

For a recent discussion of the legislative history of § 20 see U. S. ex rel. Camezon v. District Director of Immigration, D.C.S.D.N.Y.1952, 105 F.Supp. 32.

the Attorney General shall find that such alien would be subjected to physical persecution." No reasonable mind could say other than that Congress intended to forbid deportation where substantial evidence of probable physical persecution existed. And a "finding," in every judicial sense, connotes more than a perfunctory disposition of a human being. That is too reminiscent of the familiar "purge" or "liquidation."

The Courts are of course all too mindful of the important and essential purpose of the Internal Security Act and necessarily of their part in its effective implementation. But likewise there is equally the high duty of effectuating the clear Congressional purpose to forbid the sending of a deportable alien to death or torture.

The record still discloses substantial and undisputed credible evidence that petitioner's "life would be in grave danger if he were placed within the jurisdiction of the present government of South Korea." Against this is only the quoted letter of the Korean Ambassador.

■ Standing alone the fact that the United States maintains diplomatic relations with South Korea is not a reasonable basis to sustain the Attorney General's finding. For it is apparent that the statute contemplates that the finding of the Attorney General would necessarily pertain only to countries with which we maintain diplomatic relations. This is so because obviously we cannot deport to a country unwilling to accept the deportee. Nor should a statement, solicited by the delegate of the Attorney General from the diplomatic representative of such nation, that the alien would not be persecuted there, suffice. *No other reply* could reasonably be expected. By it, the Attorney General did not receive any more evidence or information about conditions in Korea than he had theretofore. Such a statement obviously could be obtained for the asking in every case in which the Attorney General is required to make a finding. It is not the sort of evidence, upon which a solemn finding, involving human life, should depend. Particularly is this so, when the whole power and resources of the government are available to the Attorney General. There is open for him the knowledge and power of the State Department. The latter could furnish him its knowledge of conditions in Korea as affecting petitioner. As well it could state whether the Korean government agreed to or pledged non-persecution of the petitioner. Upon such a showing the finding of the Attorney General might well be completely unassailable. But nothing of the kind is presented here. So we adhere to the view expressed in #31425, that the finding of the Attorney General is arbitrary.

■ Petitioner has not been detained longer than the six-months period statutorily permitted pending deportation. 8 U.S.C.A. § 156(a). The writ is granted and petitioner is released from custody, subject, however to the exercise of the power of supervision over him by the Attorney General as provided in 8 U.S.C.A. § 156(b).