**Johsel NAMKUNG, Appellant,**

v.

**John P. BOYD, District Director of Immigration and Naturalization at the Port of Seattle, State of Washington, Appellee.**

**No. 14459.**

United States Court of Appeals
Ninth Circuit.

Oct. 14, 1955.

MacDonald, Hoague & Bayless, Kenneth A. MacDonald, Seattle, Wash., for appellant.

Charles P. Moriarty, U. S. Atty., John W. Keane, F. N. Cushman, Asst. U. S. Attys., for appellee.

Before STEPHENS, HEALY, and FEE, Circuit Judges.

STEPHENS, Circuit Judge.

Johsel Namkung, a native and citizen of Korea, was ordered deported from the United States to Korea after an administrative hearing in which it was found that at the time of his entry into the United States he was an alien affiliated with the Communist Party of the United States. Namkung does not question the regularity and validity of the deportation order. He does, however, claim that if deported to Korea he will be physically

persecuted. His claim for relief was regularly presented under the following statutory authorization:

"The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason." [1]

In the exercise of the power so granted to him, the Attorney General announced a regulation providing for a hearing before an examining officer whenever a claim is made such as the one in suit, which read in part:

"(2) In any case in which the request for a stay of deportation * * * is predicated upon a claim by the alien that he would be subject to physical persecution if deported to the country designated, he may be required to submit to interrogation under oath by an immigration officer with reference to his claim with a view to any necessary clarification or explanation of his claim or of the evidence which he has furnished and the establishment of the pertinent facts upon which a determination may be made in his case. * * *

The decision whether to withhold deportation and if so, for what period of time, in any case under this subparagraph shall be made by the Commissioner or the Assistant Commissioner, Border Patrol, Detention and Deportation Division, upon *any* evidence which is available to him." [2] [Emphasis added]

Such a hearing was regularly held on December 2, 1953, as to the alien appellant's claim. Thereafter, on December 14, 1953, the hearing officer, Mr. Robert L. Needham, forwarded to the Assistant Commissioner, Border Patrol, Detention and Deportation Division, Central Office, the transcript of the hearing together with his summary thereof and his recommendation that the claim for relief should be denied. On January 5, 1954, he forwarded to the Assistant Commissioner a letter from Young Han Choo, Korean Consul General at San Francisco, California, dated December 29, 1953, wherein the Consul had written that petitioner's fear of persecution by the government of Korea was groundless, that the "Korean Government always welcomes home with open arms all those Prodigal Sons who truly repented and return home for mercy and guidance." We quote the full text of the letter in the margin. [3]

1. Title 8 U.S.C.A. § 1253(h), June 27, 1952, c. 477, Title II, ch. 5, § 243, 66 Stat. 212. Related rules may be found in Title 8, Code of Federal Regulations, Part 243. See, also, 17 Fed.Reg. 11511; 18 Fed. Reg. 4925.

2. 18 Federal Register 4925, Title 8, Aliens and Nationality, Part 243.3(b) (2), effective Aug. 19, 1953; Title 8, Code of Federal Regulations, Part 243.3. Subsequently, in the last sentence of subparagraph (2) the words "Commissioner or the Assistant Commissioner, Border Patrol, Detention and Deportation Division", were changed to "regional commissioner", 19 Federal Register 9179, Dec. 24, 1954. See also 17 Federal Register 11516, Dec. 19, 1952.

3. "Mr. Namkung's fear of persecution by the Government of the Republic of Korea is without foundation. It is true that our Government has abolished the Communist Party as a political party because of their subversive activities against the people and the Government of Korea under the direction of Moscow.

"Any former Communist party member who really turned away from this traitorous organization and returns to the ranks of freedom loving people of the world, he has nothing to fear because our Government forgives all those who renounced the red doctrine.

"Mr. Namkung confided to this writer in January, 1952, that he is no longer a member of the Communist party after he learned that his father, Rev. Namkung Hyuk, a Presbyterian Minister in Seoul, was carried away by the fiendish red hordes into northern Korea when our armed forces dealt them a stunning blow in the fall of 1950.

"The Korean Government always welcomes home with open arms all those Prodigal Sons who truly repented and return home for mercy and guidance. I hope this will assist you in carrying out justice."

No further action by the Attorney General or by the claimant appears to have been taken until February 19, 1954, when the claimant was orally advised that the Assistant Commissioner, Immigration and Naturalization Service, had denied his claim as to physical persecution. The decisive portion of the ruling is as follows: "After careful consideration of the material the alien has submitted and of his own testimony in support of his claim that he would be subject to physical persecution if deported to Korea, it is not my opinion that the alien would be subject to physical persecution if deported to that country. * * *."

No subsequent action was taken until March 26, 1954, when the claimant surrendered into the custody of the immigration authorities and then petitioned the United States District Court for the issuance of the writ of habeas corpus, and on the same day an order to show cause was issued. After issue joined, a hearing was had before the district judge at which the transcript of the proceedings before the hearing officer, the Consul General's letter, together with the Assistant Commissioner's decision, were before the court but no oral testimony was offered and after oral argument the court ruled: "* * * that the proceedings before the Immigration officials upon the petitioner's application for suspension of deportation under 8 U.S.C.A. § 1253(h) were not infected with unfairness such as denied the petitioner due process of law, * * *." The court then denied the issuance of the writ and ordered the show-cause order discharged.

The alien appears to be attacking the district court judgment upon two inconsistent theories: One is that he has the right to a full dress hearing before the Attorney General's hearing officer, together with the hearing officer's decision based solely upon the record made at the hearing. The other theory is that the hearing officer had no right to express his own opinion in his report to the Assistant Commissioner as to the proper decision.

■■■■■ As to the first contention, he argues that the transmission of the Consul General's letter to the Assistant Commissioner without reopening the hearing for cross-examination and the introduction of other evidence, deprived him of due process of law. The contention does not appear to us as valid. The hearing is not the classical administrative hearing wherein the hearing officer must be upheld in his decision if there is substantial evidence to support it,[4] but it is one in which the Attorney General may be advised by the alien as to the basis of his fears.[5] The alien was given such a hearing, but the evidence taken at the hearing is not the full extent of evidence which the Attorney General or his delegate, the Assistant Commissioner, may consider. We are in agreement with the second circuit, as expressed in United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 1953, 206 F.2d 392, 394–395:

"That section [Title 8 U.S.C.A. § 1253(h) quoted above in part] modified the language of the former statute in a manner which shows clearly, we think, that the withholding of deportation in cases where the alien fears persecution rests wholly in the administrative judgment and 'opinion' of the Attorney General or his delegate. The courts may not substitute their judgment for his. Doubtless a court might intervene

4. E.g., as provided in 17 Federal Register (Dec. 19, 1952) pp. 11511, 11514,5,6, Part 242, particularly §§ 242.53, 242.54, 242.61, 242.76; Title 8, Code of Federal Regulations, Part 242 with applicable sections (Revised 1952, with 1955 Pocket Part).

5. See 18 Federal Register (Aug. 19, 1953) p. 4925, Part 243, § 243.3(b) (2), quoted above in text of opinion. This amends 17 Federal Register (Dec. 19, 1952) p. 11516, Part 243.3(b) (2) ; see Title 8, Code of Federal Regulations (Revised 1952, with 1955 Pocket Part) § 243.3 (b) (2); Title 8 U.S.C.A. § 1253(h), June 27, 1952, c. 477, Title II, ch. 5, § 243, 66 Stat. 212.

to stay deportation, if the Attorney General or his delegate should deny the alien any opportunity to present evidence on the subject of persecution or should refuse to consider the evidence presented by the alien. But we see nothing in the statute to suggest that the courts may insist that the Attorney General's opinion be based solely on evidence which is disclosed to the alien. In his official capacity the Attorney General has access to confidential information derived from the State Department or other intelligence services of the Government which may be of great assistance to him in making his decision as to the likelihood of physical persecution of the alien in the country to which he is to be deported. We believe Congress intended the Attorney General to use whatever information he has. To preclude his use of confidential information unless he is willing to disclose it to the alien would defeat this purpose. Moreover, the very nature of the decision he must make concerning what the foreign country is likely to do is a political issue into which the courts should not intrude. As was said in Chicago & Southern Air Lines v. Waterman S.S. Corp., 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568: 'But even if courts could require full disclosure, the very nature of executive decisions as to foreign policy is political, not judicial.' "

■ We think it was proper for the hearing officer to forward the Consul General's letter to the Assistant Commissioner promptly upon its receipt by him, and that it was proper for the Assistant Commissioner to consider it in arriving at his conclusion that there was no basis for the alien's fears.

■ In his second contention, appellant alien claims that neither the statute giving the Attorney General the power to suspend deportation, nor the announced regulations, authorizes the hearing officer to proffer any recommended decision,[6] and that the transmission of the hearing officer's recommendation to the Assistant Commissioner constituted lack of due process. We see no merit in this contention. While it may be a temptation for the Commissioner to give undue weight to such a suggestion, we cannot assume that he did so. It is the general practice of hearing officers to summarize the evidence and to suggest a decision, and we discern no lack of due process in this practice from the mere fact that the Attorney General's regulations may be silent on the subject. See United States ex rel. Watts v. Shaughnessy, D.C.S.D.N.Y.1952, 107 F.Supp. 613.

■ It is claimed that the Attorney General's hearing officer, in making his Findings of Fact, garbled and misinterpreted the material and positive testimony of Frank E. Williston. No analysis is made by the alien to substantiate this broad claim. However, we have carefully reviewed Dr. Williston's testimony in comparison with the criticized Findings of Fact and, while the testimony is brief, we find no support for the claim and, as we have said, the complete transcript of the alien's case as to his fear of physical persecution, was before the Commissioner.

Finally, the alien claims lack of due process upon the ground that he was not served with notice of decision on his petition for a stay of deportation, as provided in Title 8 of the Code of Federal Regulations, § 243.3(b) (3). It is specifically admitted that the alien was given oral notice, but not written notice, of the Assistant Commissioner's decision, and it is not contended that he has taken any action (other than the instant habeas corpus proceeding) to contest the decision or the order of deportation, or has he made or taken any steps toward

---

6. While we make no point of it, it may be observed that the Assistant Commissioner's written ruling does not indicate that the Commissioner considered the Consul General's letter in arriving at his decision.

filing any motion for a reconsideration of the decision adverse to his request. The cited regulation section is as follows:

"(3) Notice of disposition of the alien's request under subparagraph (1) and (2) of this paragraph shall be served upon him, but neither the making of the request nor the failure to receive notice of decision thereon shall relieve or excuse the alien from presenting himself for deportation at the time and place designated for his deportation. No appeal shall lie from a denial of a request for a stay of deportation, but such denial shall not preclude the Board from granting a stay in connection with a motion to reconsider as provided in § 6.21(a) of this chapter." Title 8, C.F.R. § 243.3 (b) (3); 18 Federal Register 4925, Aug. 19, 1953. This amends provisions in 17 Federal Register 11516, Dec. 19, 1952.

■ There is a whole library of decisions upon the subject of oral and written notice and they are not entirely consistent.[7] However, we are of the opinion that notice as it is referred to in the text of the regulation means written notice. Notwithstanding, we think the alien has not been deprived of due process, since he admits actual notice, and after receiving knowledge of the decision from the Commissioner he voluntarily surrendered himself to the immigration authorities, in accord with the regulation. At the time of such surrender, there was nothing pending in his case except deportation itself. True, he claimed lack of due process in the instant proceeding, but we have already adversely disposed of each of his several points on that claim.

■■ We hold that the alien is not in a position to effectively raise the point that he was not served with written notice in the instance claimed. But whether or not we are right in this, the regulation itself solves the question against the alien's claim, for it provides that:

" * * * neither the making of the request nor the failure to receive notice of decision thereon shall relieve or excuse the alien from presenting himself for deportation * * *."

It appears that the restraint of the alien exercised and being exercised by District Director Boyd is in all respects according to law and that the district court was right in declining to issue the writ of habeas corpus. It follows that the judgment must be affirmed.

---

7. The alien is required, under § 243.3(b) (1) of Title 8, C.F.R. (Rev.1952), 18 F.R. 4925, Aug. 19, 1953, to request *in writing* a stay of deportation. It reads: " * * * A request for a stay by the alien shall be in writing, shall be filed with the district director, and shall be supported by an affidavit setting forth the reasons for the request and by such other evidentiary matter as may support the request."
Subsection (3) of the same section (§ 243.3(b) (3) ), requires *notice* to be *served* upon the alien, and reads in part as follows:
"Notice of disposition of the alien's request * * * shall be served upon him, * * *."
It would seem reasonable and fair to construe it as meaning a *written* notice of decision. It is not within the common understanding to construe an oral statement of a fact as *service* of a notice.

Incorporated Town of Casey v. Hogue, 1927, 204 Iowa 3, 214 N.W. 729, 731, citing Moore v. Marshalltown Opera-House Co., 81 Iowa 45, 48, 46 N.W. 750, 751; Jenkins v. Wild, 1835, 14 Wend. 539, 545; Tooele Meat & Storage Co. v. Morse, 1913, 43 Utah 515, 136 P. 965, 966, citing 29 Cyc. 1117; Pearson v. Lovejoy, 53 Barb., N.Y., 407, and Minard v. Douglas County, 9 Or. 206, 210, are cited in McPhail v. City & County of Denver, 1915, 59 Colo. 248, 149 P. 257, 258, as well as 29 Cyc. 1117.
Service commonly imports a formal presentation of a writing from one in authority to one over which the giver of notice has authority. McPhail v. City & County of Denver, 1915, 59 Colo. 248, 149 P. 257, 258; Minard v. Douglas County, 9 Or. 206, 210; National Metal Co. v. Greene Consol. Copper Co., 1907, 11 Ariz. 108, 89 P. 535, 537, 9 L.R.A., N.S., 1062.

We add that it is common knowledge that conditions in Korea have undergone change since the date of the decision as to the alien's safety from physical persecution if deported to that country. We have no doubt but that the Attorney General will consider such changes as to their probable effect, before the actual deportation of the alien.

Affirmed.