CHENG FU SHENG and Lin Fu Mei, Appellants,

v.

Bruce G. BARBER, District Director, Immigration and Naturalization Service, Appellee.

Nos. 15959, 15960.

United States Court of Appeals Ninth Circuit.

Aug. 10, 1959.

498

Fallon & Hargreaves, Robert S. Bixby, San Francisco, Cal., for appellant.

Lynn J. Gillard, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HEALY, BAZELON and BARNES, Circuit Judges.

BAZELON, Circuit Judge.

This appeal involves construction of Section 6 of the Refugee Relief Act of 1953.[1] That section, which is fully set forth in the margin below,[2] directs the

---

1. 67 Stat. 403 (1953), as amended, 50 U.S. C.A.Appendix, § 1971d.

2. § 1971d. Adjustment of immigration status of temporary residents; exceptions; maximum number.
   "Any alien who establishes that prior to July 1, 1953, he lawfully entered the United States as a bona fide nonimmigrant and that he is unable to return to the country of his birth, or nationality, or last residence because of persecution or fear of persecution on account of race, religion or political opinion, or who was brought to the United States from other American republics for internment, may, not later than June 30, 1955, apply to the Attorney General of the United States for an adjustment of his immigration status. If the Attorney General shall, upon consideration of all the facts and circumstances of the case, determine that such alien has been of good moral character for the preceding five years and that the alien was physically present in the United States on the date of the enactment of this Act and is otherwise qualified under all other provisions of the Immigration and Nationality Act except that the quota to which he is chargeable is oversubscribed, the Attorney General shall report to the Congress all the perti-

Attorney General to report to Congress all cases in which an alien establishes that prior to July 1, 1953, "he lawfully entered the United States as a bona fide nonimmigrant and that he is unable to return to the country of his birth, or nationality, or last residence because of persecution or *fear of persecution* on account of race, religion, or *political opinion*" (emphasis supplied) and that he is qualified for admission in other respects not here relevant "except that the quota to which he is chargeable is oversubscribed." It also provides that the alien in such reported cases must be deported unless Congress, by joint resolution before the end of its next session, grants him "the status of an alien lawfully admitted for permanent residence."

Appellants were born in China, joined the Nationalist Chinese Air Force at the end of World War II, and went to Formosa with the Nationalist forces in 1948 and 1949 when the Chinese mainland fell under communist control. Both were members of separate groups of Chinese Nationalist Air Force officers which were admitted to this country for eleven weeks of pilot training in 1952 and 1953. When their groups returned as scheduled to Formosa, appellants deserted and remained here. Thereafter, each applied for relief under Section 6.

At the administrative hearing on their applications, each maintained that China was his "country of last residence." It is undisputed that they would be subject to persecution there. Alternately, they claimed that even if Formosa were held to be their "country of last residence," they were strongly opposed to the policies of the Nationalist Chinese Government and by virtue of this fact were in reasonable fear that they would be persecuted if returned to Formosa.

Appellee denied relief on the theory that Formosa was appellants' "country of last residence" and that they could return there "without fear of persecution on account of [their] political opinion[s]." The District Court affirmed on the same theory as well as on the ground that as to each appellant his "status as a nonimmigrant entitled to remain in the United States terminated when he deserted his Air Force Group and took work other than specified in the terms of his admission" and that he thereby became "ineligible for the benefits" of Section 6.

Because we believe the record establishes a "fear of persecution" based on political opinion on the part of appellants if they are returned to the mainland of China or to Formosa, it is unnecessary for us to determine which is the country of nationality or last residence.

Section 6 is unique in that (1) it reserves the ultimate power of relief for Congress, and (2) it requires a showing only of "fear of persecution." It stands in sharp contrast to section 243(h) of

nent facts in the case. If, during the session of the Congress in which a case is reported or prior to the end of the session of the Congress next following the session in which a case is reported, the Congress passes a concurrent resolution stating in substance that it approves the granting of the status of an alien lawfully admitted for permanent residence to such alien, the Attorney General is authorized, upon the payment of the required visa fee, which shall be deposited in the Treasury of the United States to the account of miscellaneous receipts, to record the alien's lawful admission for permanent residence as of the date of the passage of such concurrent resolution. If, within the above specified time, the Congress does not pass such a concurrent resolution, or, if either the Senate or the House of Representatives passes a resolution stating in substance that it does not approve the granting of the status of an alien lawfully admitted for permanent residence, the Attorney General shall thereupon deport such alien in the manner provided by law: *Provided,* That the provisions of this section shall not be applicable to any aliens admitted into the United States under the provisions of Public Law 584, Seventy-ninth Congress, second session (60 Stat. 754), Public Law 402, Eightieth Congress, second session (62 Stat. 6): *Provided further,* That the number of aliens who shall be granted the status of aliens lawfully admitted for permanent residence pursuant to this section shall not exceed five thousand."

the Immigration and Nationality Act of 1952,[3] wherein the Attorney General is *"authorized"* to withhold deportation when *"in his opinion the alien would be subject to physical persecution."* (Emphasis supplied.) It has been held that this latter provision necessarily vests broad discretion in the Attorney General and that his decision involves a "political issue into which the courts should not intrude." United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 1953, 206 F.2d 392, 395; followed in Namkung v. Boyd, 9 Cir., 1955, 226 F.2d 385, and in United States ex rel. Cantisani v. Holton, 7 Cir., 1957, 248 F.2d 737, certiorari denied 1958, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed. 2d 762.

■ Appellee conceded at oral argument that Section 6 does not require administrative consideration of any "political" issue. Moreover, Section 6 contains none of the language which was used in Section 243(h) to vest broad discretion in the Attorney General. That no such broad discretion is required to effectuate the purpose of this section further appears not only from the absence of power to grant relief but also from the requirement that the alien need only be in "fear of persecution." Since the test is essentially a subjective one it is satisfied by a determination that the alien's claim has a seed of reality and is asserted in good faith.

■ Under the foregoing view of the statute, we are constrained to hold that the record establishes a "fear of persecution on account of * * * political opinions." This appears from the testimony of appellants and the affidavit of Dr. K. C. Wu, who was Governor of Formosa from 1949 to 1953, and is now living in this country. Dr. Wu stated that the Chinese Nationalist Government operates a police state under the dictatorship of Chiang Kai Shek and is often guilty of "brutal treatment of political critics." In addition, he describes an incident in which a pilot in the Chinese Nationalist Air Force deserted in 1951 because of dissatisfaction with the Government. He sought asylum in Okinawa but was returned to Formosa, where he was executed.

Appellee's only evidence in rebuttal was a letter from the Chinese Consul General of San Francisco to the effect that appellants if returned to Formosa would be subject only to conviction for desertion, with a maximum sentence of three years.[4] While this evidence is not to be ignored, it cannot be fairly viewed as destroying all rational basis for appellants' "fear of persecution." It may well be that when the case is referred to Congress it will not credit Dr. Wu's allegations or will refuse to act upon them against a friendly nation, or will decline to grant asylum to a person who is properly subject to *prosecution* for desertion from the armed forces of a military ally. But Congress, as we said, has plainly reserved such determinations for itself.

■ Finally, we conclude that the District Court erred in sustaining the administrative determination on the ground that "upon termination of [appellants'] status as bona fide nonimmigrant[s] within the meaning of Section 6 of the Refugee Relief Act, [they] became ineligible for the benefits of the Act." Since the agency action was not rested on that ground it may not be considered upon judicial review. Securities and Exchange Commission v. Chenery Corp., 1943, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626. In any event, however, the statute provides only that the applicant must have "lawfully *entered* the United States as a bona fide nonimmigrant." (Emphasis supplied.)

Accordingly, the judgments of the District Court are reversed. In the case of Cheng Fu Sheng, which arose on petition for writ of habeas corpus, the District Court is ordered to enter a judg-

---

3. 66 Stat. 214 (1952), 8 U.S.C.A. § 1253(h).

4. In Sang Ryup Park v. Barber, D.C.N.D. Cal.1952, 107 F.Supp. 605, the court convincingly disparages such evidence.

ment prohibiting the further detention of that appellant on the ground that he is not entitled to relief under Section 6 for the reason that he can return to Formosa without fear of persecution on account of his political opinions or for the reason that he is not a bona fide non-immigrant within the meaning of that Section. In the case of Lin Fu Mei, which arose on an action for declaratory judgment, the District Court is ordered to enter a judgment prohibiting the further denial of relief under Section 6 for the same reasons.